878 P.2d 335

Irva T. NELSON, Petitioner–Appellant,

v.

Claude L. NELSON, Respondent–Appellee.

No. 14873.

Court of Appeals of New Mexico.

June 3, 1994.

**18**

Eric D. Dixon, Portales, for petitioner-appellant.

Duane S. Hamar, Hamar Law Firm, P.C., Portales, for respondent-appellee.

*OPINION*

PICKARD, Judge.

█ This appeal concerns a divorce action brought by a mentally incompetent woman, Mrs. Irva T. Nelson (Wife), through her son and guardian/conservator, Mr. Bobbie K. Sanders (Guardian), against her husband, Mr. Claude L. Nelson (Husband). The divorce action was initiated on behalf of Wife by Guardian. The trial court dismissed the petition because it was not verified by Wife. The issue presented on appeal is whether a legally incompetent spouse may initiate divorce proceedings in New Mexico through a legal guardian. For the reasons outlined below, we reverse the trial court's dismissal of the divorce petition and remand with instructions that the trial court accept the petition of Wife for divorce, as initiated and verified by Guardian, and conduct further proceedings to determine Wife's desires and best interests, as well as the statutory grounds for divorce if necessary, in accordance with this opinion.

## I. BACKGROUND

Wife and Husband were married in 1962. Guardian is Wife's son from a previous marriage. Wife suffers from Alzheimer's Disease, was declared mentally incompetent in January 1992, and was placed under the guardianship of her son, who was also appointed conservator of her property. The appointment of the son as guardian was made over the objection and statutory priority of Husband. *See* NMSA 1978, § 45–5–311(B)(1) & (2) (Repl. Pamp.1989). Guardian lives in Dayton, Ohio. After being appointed, Guardian had Wife moved to a nursing home in Dayton, where she presently resides.

On behalf of Wife, Guardian filed for divorce from Husband on January 20, 1993. The original petition for divorce alleged irreconcilable differences and was verified by Guardian, since Wife, as a legally incompetent person, could not verify the legal document in her own right. Husband disputed the claim that the couple was irreconcilable and testified that Guardian was pursuing the divorce action to "hurt" Husband and to prevent Husband from inheriting from Wife. Husband affirmatively alleged that the divorce petition was inadequate because it was not verified by Wife. On June 7, 1993, the trial court granted Husband's motion to dismiss the action with prejudice for this inadequacy.

After dismissing the petition, the trial court permitted Guardian to make a factual record. At the evidentiary hearing, Guardian moved to amend the divorce complaint to allege cruel and inhumane treatment, in addition to irreconcilable differences. Guardian maintained that a divorce was in the best interests of Wife. Guardian alleged that Husband was abusive to Wife during the marriage, and that Wife, prior to the onset of Alzheimer's Disease, expressed to Guardian and other family members that her marriage to Husband was "a mistake" but that she did not know what to do about it.

Mrs. Lu Knox testified that she once heard a verbal and physical altercation between Wife and Husband while they were guests in Mrs. Knox's home. Mrs. Knox testified that Wife admitted to being physically abused by Husband. Guardian indicated there was evidence that Husband physically neglected Wife. Guardian testified that he received a call from Mrs. Knox, who told him that Wife appeared to be deteriorating in health and did not seem to be adequately supervised by Husband. Guardian further testified that he travelled to New Mexico to check on his mother's condition and found her weighing approximately sixty-nine pounds, unclothed, sleeping in an unmade bed stained with urine and fecal matter, and living in a cluttered, unkept house.

Guardian also introduced the testimony of Mr. Harold Knox, who stated that Husband left Wife alone for long periods of time on a daily basis and that he knew of instances in which Husband had sold items belonging to the couple. Guardian testified that he has not received any financial assistance from Husband to contribute to Wife's care. Guardian stated that Wife would not have wanted the marital assets to be used entirely by Husband but would want to contribute to her own care from her share of the estate. Guardian indicated that attempts to require Husband to contribute to Wife's care have failed and that Husband has harassed and threatened him.

Guardian contends that granting a divorce will prevent further harassment of Guardian and Wife by Husband, allow Wife to be enrolled in federal assistance programs to cover the cost of her future care, and guarantee that Husband will not use up the marital assets without regard to or provision for Wife's needs. Husband denies all allegations of abuse, neglect, or incompatibility, and maintains that Wife was essentially kidnapped from their home in Portales, New Mexico, and taken to Dayton, Ohio, where he has been prevented from seeing her.

## II.  ANALYSIS

The issue of whether a divorce action may be initiated and maintained by a guardian is one of first impression in New Mexico. We look to other states' resolution of similar cases for insight and guidance. A number of jurisdictions in the United States have dealt with the issue of whether an incompetent spouse may be allowed to initiate or maintain an action for divorce through a guardian, guardian ad litem, conservator, or next friend against the other spouse. Our research indicates that other courts have taken different approaches.

### A.  The Majority Rule

Most states that have addressed the issue hold that, absent specific authority granted by statute, an incompetent or insane spouse may not bring or continue an action for divorce, nor may such an action be brought or maintained by a guardian on behalf of a ward. *See generally* J.A. Connelly, Annotation, *Power of Incompetent Spouse's Guardian, Committee, or Next Friend to Sue for*

*Granting or Vacation of Divorce or Annulment of Marriage, or to Make a Compromise or Settlement in Such Suit,* 6 A.L.R.3d 681 (1966 & Supp.1993). Under this rule, a mentally incompetent spouse is not considered legally capable of making such a decision, and the decision cannot be made by a third person, even a legally appointed guardian. The only person with standing to sue for dissolution of marriage in states taking this view is a legally competent party to the marriage.

One rationale for the majority rule is that marriage is such a personal commitment that only one of the spouses can make a determination to end the marriage. *Id.* at 683; *see also Murray v. Murray,* — S.C. —, 426 S.E.2d 781, 783–84 (S.C.1993) (citing cases). Jurisdictions taking the majority position typically cite the personal nature of the marriage contract as supporting their position. *See, e.g., Scott v. Scott,* 45 So.2d 878, 879 (Fla.1950). Courts have expressed the concern that the wishes of the disabled spouse not be overridden by the values and judgments of a third party to this intimate relationship. Because there are no offenses which, in and of themselves, effect an end to the marriage, aggrieved spouses may elect to remain in marriages that seem to be against their best interests for personal, religious, moral, or economic reasons. *See* Connelly, *supra,* at 683. An incompetent spouse may be unable to express these reasons. *See, e.g., In re Jennings,* 187 N.J.Super. 55, 453 A.2d 572, 574 (Ch.Div.1981). Majority jurisdictions choose an absolute bar as the logical extension of the rule that insane persons cannot give consent. *See, e.g., Higginbotham v. Higginbotham,* 146 S.W.2d 856, 857 (Mo.Ct.App.1940), *cert. quashed,* 348 Mo. 1073, 156 S.W.2d 650 (1941) (en banc). As a practical matter, majority jurisdictions choose an absolute bar as the lesser of two evils, protecting the possibility that the incompetent spouse might elect to remain married if competent, even if it effectively prevents the incompetent spouse from ending the marriage while under the adjudication of incompetency.

## B. The Minority Rule

Jurisdictions allowing divorce suits brought or maintained by a guardian are in the minority. Such states may have statutes which specifically grant incompetents the right to sue for divorce through their guardians. *See Cohn v. Carlisle,* 310 Mass. 126, 37 N.E.2d 260, 262 (1941). However, most minority-rule courts construe existing statutes authorizing the guardian to pursue and defend civil claims in the interests of their ward to include authority to bring an action for divorce. *See Campbell v. Campbell,* 242 Ala. 141, 5 So.2d 401, 402 (1941); *In re Marriage of Ruvalcaba,* 174 Ariz. 436, 440, 850 P.2d 674, 678 (App.1993); *Kronberg v. Kronberg,* 263 N.J.Super. 632, 623 A.2d 806, 809–10 (Ch.Div.1993). A procedural variation of the minority view adopted by some jurisdictions is to allow the guardian to petition the appointing court for an order granting specific authority to seek a dissolution of the marriage on behalf of the incompetent spouse. *See In re Marriage of Gannon,* 104 Wash.2d 121, 702 P.2d 465, 467 (1985) (en banc). Some states have gone so far as to disapprove or overrule earlier contrary decisions within the jurisdiction. *See Wahlenmaier v. Wahlenmaier,* 750 S.W.2d 837, 839 (Tex.Ct. App.1988) (declining to follow *Hart v. Hart,* 705 S.W.2d 332 (Tex.Ct.App.1986), *error denied per curiam,* 762 S.W.2d 575 (Tex.1988)); *Gannon,* 702 P.2d at 467 (overruling *Jones v. Minc,* 77 Wash.2d 381, 462 P.2d 927 (1969)).

The cases contain numerous factual differences which may be dispositive. For instance, states may bar a divorce action prosecuted entirely by the guardian but allow the action to go forward when the ward is capable of understanding the nature of the action and of expressing a desire to end the marriage and does so. *See, e.g., In re Marriage of Higgason,* 10 Cal.3d 476, 110 Cal.Rptr. 897, 902, 516 P.2d 289, 294 (1973) (en banc); *Boyd v. Edwards,* 4 Ohio App.3d 142, 446 N.E.2d 1151, 1158 (1982); *Murray,* 426 S.E.2d at 784; *Syno v. Syno,* 406 Pa.Super. 218, 594 A.2d 307, 311, *appeal denied,* 529 Pa. 642, 600 A.2d 1259 (1991).

The rationale for the minority rule is that divorce is only one of the many personal decisions that can and must be made on

behalf of adult incompetent wards by their guardians. *Ruvalcaba*, 174 Ariz. at 443, 850 P.2d at 681. Guardians are empowered to make decisions resulting in the giving or withholding of lifesaving medical treatment, the ward's place of domicile, and the ward's rights of association and consortium with other persons. *See id.*; *see also Kronberg*, 623 A.2d at 810; *Gannon*, 702 P.2d at 467. Usually, an adult incompetent ward may not enter into a marriage contract, and the guardian has the power to institute an action for the annulment of a marriage entered into while the ward was incompetent. *See Fourth Nat'l Bank v. Diver*, 131 Kan. 113, 289 P. 446, 451 (1930); *see also* Connelly, *supra*, at 690.

Jurisdictions deciding this issue in recent years have increasingly adopted the minority view. For example, the 1993 *Ruvalcaba* case established Arizona as a minority jurisdiction. *Ruvalcaba*, 174 Ariz. at 443, 850 P.2d at 681. The facts in *Ruvalcaba* are similar to the facts in the instant case, and we find the analysis of the Arizona Court of Appeals to be instructive in our own efforts. In *Ruvalcaba*, an action for divorce was brought by the wife's mother, who had been appointed her guardian. The action was resisted by the husband, who had been passed over in favor of the wife's mother in the guardianship action. The guardian/mother maintained that the husband had been abusive to the wife during the marriage, and that, prior to suffering the disability for which she was judged incompetent, the wife expressed to the guardian a desire to end the marriage. *Id.* 174 Ariz. at 438–39, 850 P.2d at 676–77. The case was initially dismissed by a trial court, but the action was reinstated by the Arizona Court of Appeals, which held that:

(1) a court-appointed guardian possesses the legal authority to petition for the dissolution of marriage on behalf of an incompetent adult ward, and (2) the guardian may testify about conversations regarding desires expressed by the ward prior to becoming incompetent. *Id.* 174 Ariz. at 443, 444, 850 P.2d at 681, 682.

Similarly, in the instant case there was evidence that Wife had expressed thoughts indicating a desire to end her marriage before becoming incompetent. She admitted to others that she was abused by Husband during the marriage. When she was found by Guardian, she had evidently been neglected by Husband for some time. The court making the incompetency adjudication granted guardianship of Wife to Wife's adult son over the objections and statutory priority of Husband. *See* § 45–5–311(B)(1) to (2). This decision suggests that the appointing court felt that guardianship by Husband was not appropriate. Like the court in *Ruvalcaba*, we refuse to establish an absolute bar to a divorce action which would effectively leave an incompetent spouse at the mercy of the competent spouse. *See id.* 174 Ariz. at 443, 850 P.2d at 681; *see also Gannon*, 702 P.2d at 467. As we explain below, we find the more flexible minority rule to be in conformity with New Mexico law.

### C. New Mexico Statutory and Policy Analysis

While not expressly granting authority to the guardian to initiate a divorce action on behalf of a ward, New Mexico's guardianship statutes grant guardians exceedingly broad powers. NMSA 1978, § 45–5–312(B) (Repl. Pamp.1989) (reproduced in full in footnote *).

---

* A guardian of an incapacitated person has the same powers, rights and duties respecting the incapacitated person that a parent has respecting his unemancipated minor child except that a guardian is not legally obligated to provide from his own funds for the incapacitated person and is not liable to third persons for acts of the incapacitated person solely by reason of the guardianship. In particular and without qualifying the foregoing, a guardian has the following powers and duties, except as modified by order of the court:

(1) to the extent that it is consistent with the terms of any order by a court of competent jurisdiction relating to detention or commitment of the incapacitated person, he is entitled to custody of the incapacitated person and may establish the incapacitated person's place of abode within or without New Mexico;

(2) if entitled to custody of the incapacitated person, he shall make provision for the care, comfort and maintenance of the incapacitated person and, whenever appropriate, arrange for his training and education. He shall take reasonable care of the incapacitated person's clothing, furniture, vehicles and other personal effects and commence conservatorship proceedings if

In general, the guardian has the same rights, powers, and duties respecting the ward as a parent has respecting a child. *Id.* The legislature grants guardians the authority to interfere in the most intimately personal concerns of an individual's life. *See* § 45–5–312(B)(2) (guardian has charge of care, comfort, maintenance, education, and personal effects); –312(B)(3) (guardian may grant or withhold consent to medical treatment); –312(B)(5) (guardian may consent to physician's termination of maintenance medical treatment under certain circumstances). These powers are listed "without qualifying" the power of the guardian to act as a parent, and therefore they should be read as illustrative of the nature of the guardian's power.

When exercising the guardian's powers pursuant to the statute, the guardian is frequently required to recognize the primacy of the ward's values. *See* § 45–5–312(B)(3) (decision regarding medical care should be made "in accordance with the values of the" ward); –312(B)(5) (decision regarding maintenance medical treatment should be in accordance with what ward would have chosen). From these provisions, it follows that the ward's values should likewise be primary in determining whether the guardian should file for divorce.

Given this evident legislative intent, it would be inappropriate for New Mexico courts to adopt the majority rule, which in effect applies a conclusive presumption that wards would have wanted to maintain the marriage. In addition, cases adopting the minority rule recognize the prevalence of no-fault divorces in modern society. *See Ruvalcaba,* 174 Ariz. at 443, 850 P.2d at 681 (*quot-*

*ing Gannon,* 702 P.2d at 467). New Mexico is a "no-fault divorce" state. Our Supreme Court in *Garner v. Garner,* 85 N.M. 324, 326–27, 512 P.2d 84, 86–87 (1973), recognized that the interests of both the family and the state can be served by allowing divorce under certain circumstances. It further noted that the tendency is toward liberalizing, not narrowing, divorce laws. *Id.* at 327, 512 P.2d at 87.

■ Thus, it would be anomalous for us to hold that a guardian in New Mexico did not have the authority to file for divorce in light of the statutory provisions governing both guardianships and divorces. Accordingly, we hold that the mere condition of being under a guardianship does not preclude the initiation of a divorce action.

■ While such a holding allows for a divorce action by a guardian on behalf of a ward, we stress that courts must be cautious about granting a divorce sought by a guardian. *See Gannon,* 702 P.2d at 467. We are concerned that the wishes of an incompetent adult ward with regard to the permanence of marriage vows be respected. If those wishes cannot be definitively ascertained, a divorce may still be granted under appropriate circumstances when the best interests of the ward are implicated. As in other actions, a guardian who pursues a divorce for an incompetent adult ward has the burden of proving the necessary factual basis supporting the divorce. *See Pentecost v. Hudson,* 57 N.M. 7, 9–10, 252 P.2d 511, 512 (1953) (burden of proof is on party asserting action).

■ The authority of the guardian to pursue a divorce on behalf of a ward must

other property of the incapacitated person is in need of protection;

(3) a guardian may consent or withhold consent that may be necessary to enable the incapacitated person to receive or refuse medical or other professional care, counsel, treatment or service. Such decision shall be made in accordance with the values of the incapacitated person, if known, or the best interests of the incapacitated person if the values are not known;

(4) if no conservator for the estate of the incapacitated person has been appointed, the guardian may institute proceedings to compel any person under a duty to support the incapacitated person or to pay sums for the welfare of the incapacitated person;

(5) if the incapacitated person is certified as terminally ill or in an irreversible coma under the procedures described in Section 24–7–5 NMSA 1978, a guardian may consent to the physician removing or withholding maintenance medical treatment, as defined in Section 24–7–2 NMSA 1978, if the guardian concludes that the incapacitated person, if competent, would have chosen the termination of that treatment; and

(6) the guardian shall exercise his supervisory powers over the incapacitated person in a manner which is least restrictive of his personal freedom consistent with the need for supervision.

not be used primarily to further the inheritance interests of the ward's potential heirs unless that is what the ward would want, nor may a guardian elect to sever the marital bond because of the guardian's personal antipathy toward the ward's spouse. *See, e.g., Jennings*, 453 A.2d at 575; *Gannon*, 702 P.2d at 467. When the trial court is convinced by testimony of friends, family members, clergy, or other knowledgeable sources that the incompetent ward would have resisted divorce under any circumstances, perhaps due to religious or moral beliefs, those wishes are to be upheld. *See, e.g., Boyd*, 446 N.E.2d at 1156–57. Nevertheless, where, as here, there was evidence of abuse and there is evidence of neglect of an elderly, incompetent spouse by a competent spouse, and especially where, as here, there is evidence that the now-incompetent spouse may have expressed a desire to end the marriage prior to becoming incapacitated, we find no public policy or equitable justification for barring the ward's guardian from bringing an action for divorce on behalf of the ward.

## III.  CONCLUSION

Given the existing New Mexico statutes, it makes little sense to adopt a per se rule arbitrarily limiting the ability of a guardian to act for her or his ward in a divorce action. After examining the case law from states upholding both majority and minority positions and focussing particularly on our statutory scheme, we find the analysis applied in decisions adopting the minority view to be the most persuasive, and we hold that a guardian of an adult incompetent ward may initiate divorce proceedings on behalf of the ward. We reverse the trial court and remand with instructions to reinstate the petition and conduct proceedings to determine whether or not to grant the divorce in accordance with the views expressed herein.

IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.