GLORIA LUSTER *v.* DONALD R. LUSTER ET AL.
(AC 31907)

DiPentima, C. J., and Bear and Borden, Js.

Argued January 11—officially released April 26, 2011

*Joseph A. Hourihan* and *Teresa Capalbo*, for the appellants (defendants).

*Joel A. DeFelice* and *I. David Marder*, for the appellee (plaintiff).

*Opinion*

BEAR, J. In this issue of first impression, we are called on to determine whether the involuntary conservators of a conserved person can respond to an action for legal separation filed against the conserved person by filing an answer and cross complaint seeking a dissolution of marriage on behalf of the conserved person.[1] We answer that question in the affirmative and, therefore, reverse the judgment of the trial court dismissing this cross complaint.

[1] General Statutes § 45a-644 defines conserved person as "a person for whom involuntary representation is granted under sections 45a-644 to 45a-663, inclusive."

Gloria Luster, the plaintiff, and Donald R. Luster, the defendant,[2] were married on October 5, 1963. They had two daughters born of the marriage, who are now known as Jeannine Childree and Jennifer Dearborn. At some point prior to 2009, the defendant began to suffer from senile dementia. In early 2009, Childree and Dearborn brought a proceeding in the Probate Court for the district of Tolland for involuntary representation of the defendant. On February 18, 2009, the Probate Court appointed Childree as temporary conservator of the person and Dearborn as temporary conservator of the estate of the defendant.[3] Dearborn was given the following powers: "(1) Manage the estate, (2) Apply estate to support of conserved person, (3) Pay debts, and (4) Collect debts due."[4] Childree was given the following powers: "(1) General custody of [the] conserved person, (2) Establish residence, (3) Consent to medical or other professional care, counsel treatment or service, and (4) Provide for care, comfort, maintenance, take reasonable care of personal effects."[5]

On February 26, 2009, the plaintiff initiated suit against the defendant, who is described in the caption

[2] There are three defendants in this action: Donald R. Luster, Jeannine Childree and Jennifer Dearborn. For purposes of this opinion we will refer to Luster as the defendant and to Childree and Dearborn by their individual names or as the conservators. We will refer to all three individuals collectively as the defendants where appropriate.

[3] Pursuant to Rule 3.6 of the Connecticut Probate Practice Book: "Any person, legally authorized state official or private, non-profit corporation other than a hospital or nursing home whom the court finds to be able to act responsibly and capably in a fiduciary manner may be appointed conservator of the estate, conservator of the person, or both, except as limited by statute. . . ." Connecticut Probate Practice Book (4th Ed. 2000) Part II, Rule 3.6, p. II-27.

[4] See footnote 11 of this opinion.

[5] See footnote 12 of this opinion. We note that Probate Court forms PC-363 and PC-360, which enumerate the duties and authority of a temporary conservator and conservator of the person, do not include a comma between the words "counsel" and "treatment" in the phrase "consent to medical or other professional care, counsel treatment or service . . ." unlike General Statutes § 45a-656 (a) (3).

of her complaint as incompetent, and against Childree as conservator of his person and against Dearborn as conservator of his estate. The plaintiff alleged, inter alia, that "[s]ince October 5, 1963, irreconcilable differences have occurred between the parties which [have] caused the marriage to [break down] irretrievably and there is no hope of reconciliation."[6] The plaintiff's claims for relief included: "1. A legal separation of the marriage. 2. Alimony, pendente lite. 3. Alimony. 4. Transfer of [the] [d]efendant's interest in real estate. 5. Equitable division of property."

Also on February 26, 2009, the plaintiff filed motions for alimony pendente lite, for possession of the jointly owned premises, for payment of the family bills, and for exclusive use of the couple's motor vehicle. On March 16, 2009, the defendants filed an answer to the complaint in which they admitted paragraphs one through seven of the complaint and made the following claims for relief: "1. Alimony Pendente Lite; 2. Alimony; 3. Attorney's Fees Pendente Lite; 4. Attorney's Fees; 5. Transfer of [the] plaintiff's interest in real estate; 6. Equitable division of property; and 7. Anything else the court deems fair."

On March 17, 2009, the Probate Court found that the defendant suffered from senile dementia and was incapable of caring for himself, and it made permanent its prior temporary appointments of Dearborn and Childree. On April 1, 2009, the defendants filed a cross complaint on the official divorce complaint form (dissolution of marriage) containing allegations previously set forth in the plaintiff's complaint, which allegations

---

[6] "It is well settled that, [f]actual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . An admission in pleading dispenses with proof, and is equivalent to proof." (Internal quotation marks omitted.) *Edmands* v. *CUNO, Inc.*, 277 Conn. 425, 454, 892 A.2d 938 (2006).

the defendants had admitted in their answer. See Practice Book § 25-9.[7] If the defendants did not have pending such a cross complaint, the plaintiff could at any time without the permission of the court withdraw her complaint, thus bringing the case to a close.[8] On May 27, 2009, the court denied the plaintiff's and the defendant's motions for alimony pendente lite.

On October 30, 2009, the plaintiff filed a motion to dismiss the defendants' cross complaint "because the involuntary conservators of the [d]efendant's person and estate, cannot as a matter of law, bring a divorce action on behalf of their incompetent father . . . against their mother . . . ."

---

[7] Practice Book § 25-9 provides in relevant part: "The defendant in a . . . legal separation . . . matter may file . . . one of the following pleadings . . .

"(2) An answer and cross complaint may be filed which denies or admits the allegations of the complaint, or which states that the defendant has insufficient information to form a belief and leaves the pleader to his or her proof, and which alleges the grounds upon which a dissolution, legal separation or annulment is sought by the defendant and specifies therein the claims for relief."

[8] General Statutes § 52-80 provides in relevant part: "The plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action, or any other party thereto may withdraw any cross complaint or counterclaim filed therein by him, only by leave of court for cause shown."

"The right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by . . . § 52-80, is absolute and unconditional. Under [the] law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket. . . . *Daigneault v. Consolidated Controls Corp./Eaton Corp.*, 89 Conn. App. 712, 714, 875 A.2d 46, cert. denied, 276 Conn. 913, 888 A.2d 83 (2005), cert. denied, 546 U.S. 1217, 126 S. Ct. 1434, 164 L. Ed. 2d 137 (2006). The court unless [the action] is restored to the docket cannot proceed with it further . . . . *Lusas v. St. Patrick's Roman Catholic Church Corp.*, [123 Conn. 166, 170, 193 A. 204 (1937)]." (Internal quotation marks omitted.) *Travelers Property Casualty Co. v. Twine*, 120 Conn. App. 823, 826–27, 993 A.2d 470 (2010).

On November 10, 2009, the defendants requested permission for leave to amend their cross complaint to add a claim of intolerable cruelty by the plaintiff. On November 12, 2009, the plaintiff objected to the request to amend on the basis set forth in her motion to dismiss, namely, lack of authority by the conservators to "bring a divorce action on behalf of their incompetent father." On November 20, 2009, the defendants filed their objection to the plaintiff's motion to dismiss "because a Conservator has a right to bring a dissolution action on behalf of her Conserved Person when acting in the best interests of her Conserved Person . . ." noting that "the [p]laintiff has already factually stated that the marriage . . . has broken down [irretrievably] and there is no hope of reconciliation."

On January 7, 2010, the court granted the plaintiff's motion to dismiss the defendants' cross complaint. It concluded that "the conservators of the defendant cannot bring a cross complaint in this case . . . ."[9] On

---

[9] The effect of the plaintiff's actions in the trial court has been to deny the defendant equal access to the court and to a hearing on relief that he, but not the plaintiff, seeks, solely on the basis of his incompetence. Although an action for divorce in Connecticut exists under an extensive statutory framework, it is an equitable proceeding: "While an action for divorce or dissolution of marriage is a creature of statute, it is essentially equitable in its nature. *Stoner* v. *Stoner*, 163 Conn. 345, 356, 307 A.2d 146 [(1972)]. As we said in *German* v. *German*, [122 Conn. 155, 160, 188 A. 429 (1936)]: In New York State as with us, divorce, with its incident of alimony, is a creature of statute. *Ackerman* v. *Ackerman*, 200 N.Y. 72, 76, 93 N.E. 192 [1910]; *Cary* v. *Cary*, [112 Conn. 256, 258, 152 A. 302 (1930)]. It does not, however, follow that an action for divorce is one at law. The [l]egislature can create equitable rights and provide equitable remedies as well as it can those cognizable in the law courts. Obviously the relief given in a divorce action is not such as could be granted in a common-law court but is essentially equitable in its nature. The fact that equitable and legal rights have come to be administered by a single court does not change the nature of the decree. *German* v. *German*, supra, 162.

"The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . . " (Internal quotation marks omitted.) *Pasquariello* v. *Pas-*

January 26, 2010, the defendants appealed from the judgment of the court dismissing the cross complaint.

We note the principles that guide us in our review of this appeal. "A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Emphasis in original; internal quotation marks omitted.) *LaBow* v. *LaBow*, 85 Conn. App. 746, 752, 858 A.2d 882 (2004), cert. denied, 273 Conn. 906, 868 A.2d 747 (2005). "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 113, 967 A.2d 495 (2009). "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Carrubba* v. *Moskowitz*, 274 Conn. 533, 550, 877 A.2d 773 (2005). "[A] determination regarding a trial court's subject matter jurisdiction is a question of law, [and therefore] our review is plenary." (Internal quotation marks omitted.) *In re Matthew F.*, 297 Conn. 673, 688, 4 A.3d 248 (2010).

On appeal, the defendants argue that Connecticut should recognize the right of a conserved person to maintain a dissolution of marriage action through a properly appointed involuntary conservator when such dissolution is in the best interest of the conserved person. They argue that to prohibit a conserved person

*quariello*, 168 Conn. 579, 584–85, 362 A.2d 835 (1975). "The term equity denotes the spirit and habit of fairness, justness and right dealing which would regulate the intercourse [between individuals]. Black's Law Dictionary (6th Ed. 1990)." (Internal quotation marks omitted.) *Jacobs* v. *Fazzano*, 59 Conn. App. 716, 729, 757 A.2d 1215 (2000).

from dissolving his marriage is not equitable and may deprive the conserved person of his dignity because it gives the competent spouse final control over the marriage to the exclusion of the conserved spouse even when the conserved spouse is facing physical, emotional or financial harm at the hands of the competent spouse. They further argue that there are safeguards in place to guard against involuntary conservators who act improperly in seeking to dissolve the marriage of the conserved person because the involuntary conservators still would have to sustain their burden of proof that the conserved person was entitled to a dissolution of marriage and that such dissolution was in the conserved person's best interest.

The plaintiff, on the other hand, argues that we should not permit an involuntary conservator to maintain a dissolution of marriage action on behalf of a conserved person.[10] She argues that the power of conservators is limited and that there are no statutes in Connecticut that would authorize an involuntary conservator to maintain a dissolution of marriage action on behalf of a conserved person. Furthermore, she argues, public policy concerns would prohibit us from concluding that involuntary conservators have such authority. If we were to agree with the defendants, the plaintiff argues, we would grant "involuntary conservators the power to, literally, bring dissolution of another's marriage for a myriad of reasons including financial gain or personal animosity." We conclude that the involuntary conservators in this case are not prohibited, as a matter of law, from seeking a dissolution of marriage on behalf of the defendant.

We begin by looking to the statutes that define the duties and authority of those appointed as involuntary

---

[10] The plaintiff concedes that a conserved person is not capable of maintaining an action for dissolution on his or her own behalf.

conservators. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 539, 778 A.2d 93 (2001).

"The statutory duties of a conservator are clearly defined in General Statutes § 45a-655,[11] which delineates the duties of a conservator of the estate, and General Statutes § 45a-656,[12] which prescribes the

---

[11] The duties of the conservator of the estate are defined in General Statutes § 45a-655, which provides in relevant part: "(a) A conservator of the estate . . . shall, within two months after the date of the conservator's appointment, make and file in the Court of Probate, an inventory, under penalty of false statement, of the estate of the conserved person, with the properties thereof appraised or caused to be appraised, by such conservator, at fair market value as of the date of the conservator's appointment. Such inventory shall include the value of the conserved person's interest in all property in which the conserved person has a legal or equitable present interest, including, but not limited to, the conserved person's interest in any joint bank accounts or other jointly held property. The conservator shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the conserved person and those members of the conserved person's family whom the conserved person has the legal duty to support and to pay the conserved person's debts, and may sue for and collect all debts due the conserved person. The conservator shall use the least restrictive means of intervention in the exercise of the conservator's duties and authority. . . ."

[12] The duties of a conservator of the person are established pursuant to General Statutes § 45a-656, which provides in relevant part: "(a) The conservator of the person shall have the duties and authority expressly assigned by the court pursuant to section 45a-650, which duties and authority may include: (1) The duty and responsibility for the general custody of the conserved person; (2) the authority to establish the conserved person's

duties of a conservator of the person. A conservator of the estate shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the ward and those members of the ward's family whom he or she has the legal duty to support and to pay the ward's debts . . . . General Statutes § 45a-655 (a). A conservator of the person has the duty to provide for the care, comfort and maintenance of the ward; General Statutes § 45a-656 (a) (4); and that duty shall be carried out within the limitations of the resources available to the ward, either through his own estate or through private or public assistance. General Statutes § 45a-656 (a)." (Internal quotation marks omitted.) *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, supra, 257 Conn., 539–40.

The role of a conservator of the estate and his or her relationship to the Probate Court has been explained

residence within the state, subject to the provisions of section 45a-656b; (3) the authority to give consent for the conserved person's medical or other professional care, counsel, treatment or service; (4) the duty to provide for the care, comfort and maintenance of the conserved person; and (5) the duty to take reasonable care of the conserved person's personal effects.

"(b) In carrying out the duties and authority assigned by the court, the conservator of the person shall exercise such duties and authority in a manner that is the least restrictive means of intervention and shall (1) assist the conserved person in removing obstacles to independence, (2) assist the conserved person in achieving self-reliance, (3) ascertain the conserved person's views, (4) make decisions in conformance with the conserved person's reasonable and informed expressed preferences, (5) make all reasonable efforts to ascertain the health care instructions and other wishes of the conserved person, and (6) make decisions in conformance with (A) the conserved person's expressed health care preferences, including health care instructions and other wishes, if any, described in section 19a-580e, or validly executed health care instructions described in section 19a-580g, or (B) a health care decision of a health care representative described in subsection (b) of section 19a-580e, except under a circumstance set forth in subsection (b) of section 19a-580e. The conservator shall afford the conserved person the opportunity to participate meaningfully in decision-making in accordance with the conserved person's abilities and shall delegate to the conserved person reasonable responsibility for decisions affecting such conserved person's well-being. . . ."

by our Supreme Court: "In *Marcus' Appeal from Probate*, 199 Conn. 524, 528, 509 A.2d 1 (1986), we discussed the role of conservators as follows: A conservator has only such powers as are expressly or impliedly given to him by statute. . . . A conservator of the estate, under our law, is a person appointed by the court of probate under the provisions of [General Statutes c. 779, now c. 802h] to supervise the financial affairs of a person found to be incapable of managing his or her own affairs . . . . General Statutes § 45-70a (a) [now § 45a-644 (a)]. . . . A conservator of an estate owes a duty of loyalty to a ward. *Marshall* v. *Kleinman*, 186 Conn. 63, 65, 438 A.2d 1196 (1982). . . .

"In *Marcus' Appeal from Probate*, supra, 199 Conn. 528–29, we also discussed the relationship between conservators and probate courts, noting that, [i]n exercising [its statutory] powers, [a conservator] is under the supervision and control of the Probate Court. *Elmendorf* v. *Poprocki*, 155 Conn. 115, 118, 230 A.2d 1 (1967). . . . The [P]robate [C]ourt is a court of limited jurisdiction and has only such powers as are given it by statute or are reasonably to be implied in order to carry out its statutory powers. *Prince* v. *Sheffield*, 158 Conn. 286, 293–94, 259 A.2d 621 (1969); *Palmer* v. *Reeves*, 120 Conn. 405, 408, 182 A. 138 (1935). . . . The Probate Court is under an affirmative duty to protect the assets of an incompetent's estate. *Marshall* v. *Kleinman*, [supra, 186 Conn. 69]. . . . Finally, we stated that [t]he court, and not the conservator, is primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court. . . . *Marcus' Appeal from Probate*, supra, 529. [I]t is clear that the conservator acts under the supervision and control of the Probate Court in the care and management of the ward's estate. Id. Under our law, the Probate Court . . . [is] under a duty to protect [the ward's] assets, and . . . the conservatrix, as an arm

of the Probate Court, [is] under the same obligation." (Internal quotation marks omitted.) *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 707–708, 724 A.2d 1093 (1999).

Our Supreme Court has also stated: "A conservator is a fiduciary . . . ." *Marcus' Appeal from Probate*, supra, 199 Conn. 533. "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." (Internal quotation marks omitted.) *Murphy* v. *Wakelee*, 247 Conn. 396, 400, 721 A.2d 1181 (1998). "A conservator [however] has only such powers as are expressly or impliedly given to him by statute." (Internal quotation marks omitted.) Id., 406. "The statutory duties of a conservator are clearly defined in . . . § 45a-655, which delineates the duties of a conservator of the estate, and . . . § 45a-656, which prescribes the duties of a conservator of the person." *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, supra, 257 Conn. 539–40.

In determining whether the conservators in this case have the authority to maintain a dissolution action on behalf of the defendant, we are mindful of the importance of the right of access to our courts, a right shared by all people, including those declared legally incompetent. See Conn. Const., art. I, § 10.[13] In protecting the rights of those declared legally incompetent, our Supreme Court explained: "If the plaintiff were legally incompetent to sue or his access to the courts were

___

[13] "Article first, § 10, of the Connecticut constitution provides: 'All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.' We have interpreted article first, § 10, as a provision protecting access to our state's courts . . . ." *Moore* v. *Ganim*, 233 Conn. 557, 573, 660 A.2d 742 (1995).

impaired, [a] statute could not commence the limitations period running until he regained his legal competency; otherwise, through no fault of his own, he could be barred from any redress and thus become a legally helpless and vulnerable target for any careless or malicious person. See *Hobart* v. *Connecticut Turnpike Co.*, 15 Conn. 145, 148 [1842]. Furthermore, in no case does the law deprive an insane person or a person under a disability of access to the courts in order to seek redress, but a court may make provision to insure that such person's interests are well represented. See, e.g., General Statutes §§ [17a-524] (habeas corpus), [45a-655] (conservators), [45a-132] (guardian ad litem), 52-175 (evidence) . . . ." *Kirwan* v. *State*, 168 Conn. 498, 502–503, 363 A.2d 56 (1975).

"[O]ne whose thought processes are impaired to the extent of being insane has a legal capacity to sue or be sued, provided he has not been formally adjudicated an incompetent and placed under the guardianship of another. . . . The court may, as the circumstances warrant, appoint a guardian ad litem to ensure that the interests of the person who may be incompetent are adequately protected." (Citations omitted.) *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 539, 429 A.2d 801 (1980). If, however, an incompetent person has been adjudicated as such, he may sue only through a representative.

A conserved person, like a minor, is able to pursue civil litigation only through a properly appointed representative, i.e., a conservator. "Legal disability of an incompetent is analogous to that of a minor. See *Brown* v. *Eggleston*, 53 Conn. 110, 119, 2 A. 321 (1885)." *Newman* v. *Newman*, 35 Conn. App. 449, 451 n.2, 646 A.2d 885 (1994), rev'd on other grounds, 235 Conn. 82, 663 A.2d 980 (1995). "Limitations and restrictions often may be imposed on the activities of minor children because of their lack of mature judgment. Children, like incompetents, do not have the legal capacity to bring actions

in their own names, but may do so only through an authorized representative. 'The law does not deprive a person adjudicated incompetent of access to the courts . . . rather, provision is made to ensure that such interests are well represented.' *Cottrell* v. *Connecticut Bank & Trust Co.*, 175 Conn. 257, 261, 398 A.2d 307 (1978). '[T]he purpose of providing representation is to ensure that the legal disability imposed will not undermine adequate protection of a ward's interest.' Id., 264." *Newman* v. *Newman*, supra, 451.

"Furthermore, the general rule is well established that 'a child may bring a civil action only by a guardian or next friend, whose responsibility it is to ensure that the interests of the ward are well represented. *Cottrell* v. *Connecticut Bank & Trust Co.*, [supra, 175 Conn. 261]; *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970). When a guardian has been appointed to protect the interests of a child, the guardian is usually the proper person to bring an action on behalf of the child. *Williams* v. *Cleaveland*, 76 Conn. 426, 434, 56 A. 850 (1904).' " *Newman* v. *Newman*, 235 Conn. 82, 95, 663 A.2d 980 (1995); see *Orsi* v. *Senatore*, 230 Conn. 459, 466–67, 645 A.2d 986 (1994).

In Connecticut, there are many examples in our case law of conservators bringing suit on behalf of their wards to protect their interests. See, e.g., *Murphy* v. *Wakelee*, supra, 247 Conn. 398 (action by conservator to recover damages for former conservator's breach of fiduciary duty); *Forsyth* v. *Rowe*, 226 Conn. 818, 820, 629 A.2d 379 (1993) (conservator sued alleging ward improperly denied Medicaid benefits); *Pintavalle* v. *Valkanos*, 216 Conn. 412, 414, 581 A.2d 1050 (1990) (conservator alleged defendant grossly negligent in serving alcohol to driver who severely injured ward); *Kleinman* v. *Marshall*, 192 Conn. 479, 480, 472 A.2d 772 (1984) (action by conservator to nullify real estate conveyance

from incompetent ward to daughter); *Zullo* v. *Ocalewski,* Superior Court, judicial district of New Haven, Docket No. FA-06-4020422-S (April 2, 2007) *(Frazzini, J.)* (43 Conn. L. Rptr. 201) (conservator brought action seeking annulment of ward's marriage); *Garris* v. *Summerville Health Care Group,* Superior Court, judicial district of Litchfield, Docket No. CV-01-085059-S (May 29, 2002) *(DiPentima, J.)* (32 Conn. L. Rptr. 262) (holding powers, duties and obligations of conservator include power to bring lawsuit).

In the present case, the plaintiff argues that there is no statute that gives the involuntary conservators the authority to pursue a dissolution of marriage action on behalf of the defendant, a conserved person, and that the defendant, as a conserved person, cannot maintain such a cause of action on his own behalf. We disagree.

General Statutes § 45a-650 (k) very clearly states: "[a] conserved person shall retain *all rights and authority* not expressly assigned to the conservator." (Emphasis added.) Additionally, although a conserved person retains all of his or her unassigned rights and authority; see General Statutes § 45a-650 (k); there has been created a common-law rule that a conserved person, like a minor, does not have the legal capacity to bring a civil action in his or her own name, but must do so through a properly appointed representative, except in limited circumstances.[14] See *Lesnewski* v. *Redvers,* 276

---

[14] Our Supreme Court has recognized various exceptions to the common-law rule that a conserved person cannot initiate in his or her own name a civil action or an appeal from an order of the Probate Court. See, e.g., *Lesnewski* v. *Redvers,* 276 Conn. 526, 537, 886 A.2d 1207 (2005) (appeal may be brought by attorney representing conserved person); *Cottrell* v. *Connecticut Bank & Trust Co.,* supra, 175 Conn. 265 (appeal may be brought by next friend); *Newman* v. *Newman,* supra, 235 Conn. 82 (minor represented by counsel may appeal without guardian or next friend). Such exceptions are not relevant to this case because the conservators of the defendant are parties to the case. Additionally, the defendant is a named party and he is represented by counsel.

Conn. 526, 530, 886 A.2d 1207 (2005); *Cottrell* v. *Connecticut Bank & Trust Co.*, supra, 175 Conn. 261; *Newman* v. *Newman*, supra, 35 Conn. App. 451.

Although our law does not deprive a conserved person of access to the courts, it attempts to ensure that the conserved person's interests are represented adequately and not undermined by his or her disability. See *Cottrell* v. *Connecticut Bank & Trust Co.*, supra, 175 Conn. 261; *Newman* v. *Newman*, supra, 35 Conn. App. 451; see also *Newman* v. *Newman*, supra, 235 Conn. 95; *Orsi* v. *Senatore*, supra, 230 Conn. 466–67; *Williams* v. *Cleaveland*, supra, 76 Conn. 434. Furthermore, "[a]n action for a divorce or a legal separation obviously is a civil action. . . . General Statutes § 46b-45 leaves no doubt that [a] proceeding . . . for . . . dissolution of marriage . . . shall be commenced by the service and filing of a complaint as in all other civil actions in the [S]uperior [C]ourt . . . ." (Citation omitted; internal quotation marks omitted.) *Fernandez* v. *Fernandez*, 208 Conn. 329, 336–37, 545 A.2d 1036 (1988), cert. denied, 493 U.S. 958, 110 S. Ct. 376, 107 L. Ed. 2d 361 (1989).

In reviewing our statutes and relevant case law, we find nothing that would prohibit the conservators in this case from maintaining an action for dissolution of marriage on behalf of the defendant, who also is a named party and who is represented by counsel. To the contrary, § 45a-650 (k) specifically grants a conserved person *all rights and authority* not expressly assigned, and our case law specifically provides that a conserved person, except in limited circumstances, may not bring a civil action in his or her own name but must do so only by a properly appointed representative who will protect the rights of the conserved. See *Lesnewski* v. *Redvers*, supra, 276 Conn. 536–37; *Cottrell* v. *Connecticut Bank & Trust Co.*, supra, 175 Conn. 261; *Newman* v. *Newman*, supra, 35 Conn. App. 451. Given that a

conserved person, except in limited circumstances, may bring a civil action only through a properly appointed representative, such as a conservator, and that an action for dissolution of marriage is a civil action, combined with the conserved person's retention of *all rights and authority* not specifically assigned, we conclude that a conservator may bring a civil action for dissolution of marriage on behalf of a conserved person.

If the legislature had wanted to restrict a conserved person's ability to file an action for dissolution through his conservator, the legislature certainly could have done so. This conclusion is bolstered by the legislature's specific restriction on a conserved person's ability to marry. Pursuant to General Statutes § 46b-20a, a conserved person is not permitted to marry without the express written consent of the conservator, and the consent form must be signed and properly acknowledged by a person authorized to take acknowledgments. We can ascertain no legislative restrictions on the ability of a conserved person to seek a dissolution of marriage through a properly appointed representative.

In this case, we conclude that the defendant's conservators have the duty and responsibility to act to protect his person and his estate. See General Statutes §§ 45a-655 and 45a-656. The record contains information about the possible impact of the plaintiff's alleged financial actions on the defendant's circumstances and on his possible access to medical care and housing, as well as the harm he may suffer if the conservators are unable to pursue a dissolution of marriage on his behalf. We thus conclude that under the circumstances present in this case the conservators have both the duty and the authority to act to protect the interests of the defendant. If those interests best can be protected through the filing of a cross complaint seeking a dissolution of marriage, the conservators have the authority to file such

an action.[15] We therefore reverse the judgment of the trial court granting the plaintiff's motion to dismiss the cross complaint, and we remand the matter to the trial court.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.

BORDEN, J., concurring. I agree with and join the majority opinion. I write separately, however, to highlight several considerations that, in my view, are important to the resolution of this appeal.

First, the issue of this appeal is somewhat broader than the majority frames it. It is not limited to whether

---

[15] Appellate courts of other states also have concluded that a guardian or conservator may institute and defend dissolution of marriage suits. See, e.g., *Hopson* v. *Hopson,* 257 Ala. 140, 141, 57 So. 2d 505 (1952); *Campbell* v. *Campbell,* 242 Ala. 141, 142–43, 5 So. 2d 401 (1941), rehearing denied, January 15, 1942; *Ruvalcaba* v. *Ruvalcaba,* 174 Ariz. 436, 445–46, 850 P.2d 674 (App. 1993); *In re Salesky,* 157 N.H. 698, 704, 958 A.2d 948 (2008); *Nelson* v. *Nelson,* 118 N.M. 17, 22, 878 P.2d 335 (App. 1994); *In re Marriage of Gannon,* 104 Wn. 2d 121, 124, 702 P.2d 465 (1985) (en banc). Other appellate courts, however, have denied permission. See, e.g., *In re Marriage of Drews,* 115 Ill. 2d 201, 205, 503 N.E.2d 339 (1986), cert. denied, 483 U.S. 1001, 107 S. Ct. 3222, 97 L. Ed. 2d 729 (1987); *In re Marriage of Denowh,* 317 Mont. 314, 319, 78 P.3d 63 (2003), rehearing denied, October 23, 2003; *Murray* v. *Murray,* 310 S.C. 336, 342, 426 S.E.2d 781 (1993); *Samis* v. *Samis,* 189 Vt. 434, 22 A.3d 444 (2011).

For a general overview of this topic, see also D. Mills, "But I Love What's-His-Name: Inherent Dangers in the Changing Role of the Guardian in Divorce Actions on Behalf of Incompetents," 16 J. Am. Acad. Matrim. Law. 527 (2000); V. Martinez, "Family Law—New Mexico Expands the Power of a Guardian to Include the Right to Initiate and Maintain a Divorce Action on Behalf of the Guardian's Incompetent Ward: *Nelson* v. *Nelson,* [118 N.M. 17, 878 P.2d 335 (App. 1994)]," 25 N.M. L. Rev. 295 (1995); K. Metzmeier, "The Power of an Incompetent Adult to Petition for Divorce Through a Guardian or Next Friend," 33 U. Louisville J. Fam. L. 949 (1994–1995); annot., "Power of Incompetent Spouse's Guardian or Representative to Sue for Granting or Vacation of Divorce or Annulment of Marriage, or to Make Compromise or Settlement in Such Suit," 32 A.L.R.5th 673 (1995).

the involuntary conservators of the person and the estate of a ward can respond to an action for legal separation filed by their ward's spouse by seeking a dissolution of the marriage; it is, instead, whether such conservators[1] can seek a dissolution[2] of the marriage of the ward, whether by initiating or responding to such an action. That is because the interests of the ward that may require protection are the same irrespective of the procedural posture of the case. Furthermore, this appeal involves only the narrow question of whether, as a matter of law, such conservators have the legal power, in an appropriate case, to bring an action for dissolution of their ward's marriage. It does not involve the separate question of whether, in any given case, they may have violated their fiduciary duty to their ward by doing so.

Second, it goes without saying that the decision to end a marriage is necessarily very personal and, therefore, to be made with great caution even by the person

---

[1] In the present case, both the conservator of the person and of the estate of the ward, Donald R. Luster, are named as defendants, and both brought the cross complaint that is at issue. That is appropriate because an action seeking to end a marriage, whether by judgment of dissolution or legal separation, ordinarily involves, as this case does, both personal and property considerations. I can conceive, however, of a case in which neither the ward nor the spouse has any income or property interests to be determined by the court, in which case only the conservator of the person would likely be the appropriate party on the ward's behalf.

Furthermore, it is important to note that this case involves involuntary conservators appointed for their ward, who suffers from senile dementia. It is conceivable that, in the case of a voluntary conservatorship, the ward might have the personal capacity to make the decision of whether to seek to end his or her marriage. See R. Folsom & G. Wilhelm, Connecticut Estates Practice: Incapacity and Adoption (2d Ed. 1991) § 2:5 (appointment of voluntary conservator does not involve finding of ward's incapacity); General Statutes § 45a-650 (appointment of involuntary conservator requires finding that ward incapable of managing affairs or caring for himself).

[2] I include in this analysis the power to bring an action for legal separation, as opposed to an action for dissolution. I use the term "dissolution," rather than "dissolution or legal separation," only for the purposes of simplicity because the only difference between the two is that, upon a judgment of legal separation the parties are not free to remarry; see General Statutes

in the marriage, let alone by one acting legally in that person's stead. Thus, for purposes of this analysis, I focus principally on the function of the conservator of the ward's person, as opposed to his estate. As the majority so aptly demonstrates, the conservator of the person has those duties and responsibilities expressly afforded her by the Probate Court, which by statute include the general custody of the ward, the authority to decide where the ward will live, the authority to give consent to medical and other professional care, and the duty to provide for the ward's care, comfort and maintenance. See General Statutes § 45a-656 (a).

Implicit in these explicit duties and responsibilities is the duty to maintain the personal dignity of the ward. And, of course, as the majority demonstrates, the conservator is a fiduciary for the ward and, therefore, must always act in the ward's best interest. Therefore, when the conservator decides, acting in that fiduciary capacity, that her ward's best interest and personal dignity require that his marriage be dissolved, she must have the power to take appropriate legal action to accomplish that end. This implicit power is different only in degree, not in kind, from the general explicit powers over the custody, health care, care, comfort, maintenance and health of the ward that the statutes provide and, therefore, must be considered as implicit in those explicit powers. As the New Mexico Court of Appeals acknowledged: "[Marital dissolution] is only one of the many personal decisions that can and must be made on behalf of adult incompetent wards by their [conservators]. . . . [Conservators] are empowered to make decisions resulting in the giving or withholding of life-saving medical treatment, the ward's place of domicile, and the ward's rights of association and consortium

---

§ 46b-67 (b); until, of course, one of them petitions the court to convert the legal separation into a dissolution. See General Statutes § 46b-65 (b).

with other persons." (Citation omitted.) *Nelson* v. *Nelson*, 118 N.M. 17, 20–21, 878 P.2d 335 (App. 1994).

Third, supporting this interpretation of the statutory powers of a conservator of the person is the notion of basic, fundamental fairness, expressed by our constitutional provision regarding equal access to our courts, as the majority points out. If we were to read our conservatorship statutes in the cramped fashion urged by the plaintiff, Gloria Luster, in the present case and hold that a conservator has no power to bring an action to end the marriage of her ward, we would be lodging solely in the competent spouse the power to do so. Indeed, this record demonstrates that, when the plaintiff moved to dismiss the cross complaint filed by the defendants, Donald R. Luster, Jeannine Childree, conservator of the person of Donald R. Luster, and Jennifer Dearborn, conservator of the estate of Donald R. Luster, she represented that she intended to withdraw her action for a legal separation. As it turns out, however, we were informed at oral argument in this court that she never did so, and the plaintiff's action for legal separation has continued apace in the trial court, unadorned, however, by the defendants' cross complaint. Nonetheless, the plaintiff retains the power to withdraw her action at any time, without court approval, before judgment has been rendered; see General Statutes § 52-80; leaving the conservators remediless on their ward's behalf.

This hardly would comport with any reasonable conception of equal access to our courts. As our Supreme Court has stated: "The law does not deprive a person adjudicated incompetent of access to the courts in order to seek redress; rather, provision is made to ensure that such interests are well represented." *Cottrell* v. *Connecticut Bank & Trust Co.*, 175 Conn. 257, 261, 398 A.2d 307 (1978); see also *In re Marriage of Gannon*, 104 Wn. 2d 121, 124, 702 P.2d 465 (1985) (en banc)

("[I]n these days of termination of life support, tax consequences of virtually all economic decisions, no-fault dissolutions and the other vagaries of a vastly changing society, we think an absolute rule denying authority [of a conservator to bring a dissolution action] is not justified nor in the public interest. . . . Unless this course of action is available, the competent party is vested with absolute, final control over the marriage. This is not equitable." [Citation omitted.]).

Finally, considerations of sound policy counsel strongly for interpreting a conservator's statutory powers so as to include the power to bring an action for marital dissolution. The Arizona Court of Appeals has stated that denying a conservator the power to bring a dissolution action "threatens to leave an incompetent spouse without adequate legal recourse against potential physical, emotional or financial abuse by the competent spouse. We believe that to hold an incompetent spouse a prisoner to physical or emotional abuse at the hands of a competent spouse by means of the bands of matrimony is untenable. Thus, the [conservator] may proceed after concluding that this is what the ward would want, basing that conclusion on what is known of the ward's preferences and the ward's general values regarding marriage and [dissolution] and overall manner of living." *Ruvalcaba* v. *Ruvalcaba*, 174 Ariz. 436, 443–44, 850 P.2d 674 (App. 1993).

It is true, as the defendants' arguments suggest, that there is the potential for a conservator to abuse her trust and bring a dissolution action for her own, rather than her ward's, interest, particularly where, as in the present case, the conservators are family members. One can conceive, of course, of two ends of a spectrum: one end, where a conservator does so; and the other end, where the competent spouse is engaging in a course of public conduct that is humiliating to the incompetent spouse, who, because of the degree of his

incompetency, may not even be aware of that course of conduct—but his personal dignity nonetheless would demand some redress. This hypothetical spectrum argues strongly for interpreting our statutes to include the power to bring a dissolution action.

In the first case—where the conservator arguably is acting in her own best interest, rather than her ward's—there would be legal remedies available to the competent spouse, both in the Probate Court that appointed the conservator and in the Superior Court where the unjustified dissolution action would be pending. In the second case, however—where the conservator has brought a dissolution action justifiably to vindicate her ward's personal dignity—unless she had the power to do so that personal harm would go unvindicated.

I therefore agree that the judgment of the trial court dismissing the defendants' cross complaint should be reversed, and the case be remanded for further proceedings according to law.