# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 29

**APRIL TERM, A.D. 2023**

**April 10, 2023**

MADONNA M. FLORY,

Appellant
(Plaintiff),

v.

S-22-0164

RAND E. FLORY,

Appellee
(Defendant).

*W.R.A.P. 11 Certification*
*Certified Question from the District Court of Park County*
The Honorable Bill Simpson, District Judge

*Representing Appellant:*
Jennifer-Ann Seeger Jensen of Burg Simpson Eldredge Hersh and Jardine, P.C., Cody, Wyoming.

*Representing Appellee:*
No appearance.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*KAUTZ, J., delivers the opinion of the Court; FENN, J., files a dissenting opinion, in which FOX, C.J., joins.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ, Justice.**

[¶1]     We accepted certification of a question from the Fifth Judicial District Court in Park County, Wyoming, regarding the authority of a court-appointed guardian and conservator of an incompetent adult ward to petition the district court for the ward's divorce.  We conclude neither a guardian nor a conservator has the power under Wyoming law to pursue a divorce on behalf of a ward.

## CERTIFIED QUESTION

[¶2]     We agreed to answer the following question:  "In the State of Wyoming, may a Guardian/Conservator move for and prosecute a divorce action on behalf of the Ward?"

## FACTS

[¶3]     The parties stipulated to all relevant facts.  Madonna M. Flory and Rand E. Flory married in 1975.  Ms. Flory has Alzheimer's dementia and lives in Casper, Wyoming, with the parties' son, Lucas Flory (Lucas).  Mr. Flory continues to live in the marital home in Cody, Wyoming.  Ms. Flory's physician determined in August 2021 she was incapable of making medical or life decisions for herself.  In March 2022, the court in a separate probate action appointed Lucas (Guardian/Conservator) as guardian of Ms. Flory's person and conservator of her estate.

[¶4]     Approximately one month after he was appointed, Guardian/Conservator filed a complaint in the district court for Ms. Flory's divorce from Mr. Flory.  Mr. Flory responded to the complaint and raised "the affirmative defense" that Guardian/Conservator was not authorized to file for divorce on behalf of Ms. Flory.  The parties agreed that the answer to the question of whether a guardian or conservator could file for divorce on behalf of a ward may be determinative of the divorce action and there was no controlling Wyoming precedent on the issue.[1]  *See* Wyoming Rule of Appellate Procedure (W.R.A.P.) 11.01 ("The supreme court may answer questions of law certified to it by . . . a state district court . . . if there is involved in any proceeding before the certifying court . . . a question of law which may be determinative of the cause then pending in the certifying court . . . and concerning which it appears there is no controlling precedent in the decisions of the supreme court.").  The district court granted the parties' stipulated motion to certify the question to this Court under W.R.A.P. 11.01 through 11.04.

---

[1] In *Matter of Guardianship of McNeel,* 2005 WY 36, ¶¶ 3, 6, 10, 34, 109 P.3d 510, 512-13, 519 (Wyo. 2005), the wife claimed the district court erred by allowing the husband's voluntarily-appointed guardian and conservator to proceed with a divorce action the husband had filed prior to the appointment.  We refused to consider the issue because the wife did not file a notice of appeal from the divorce decree.  *Id.,* ¶¶ 34-35, 109 P.3d at 519.

1

[¶5]    This Court agreed to answer the certified question and ordered the parties to brief the issue.  *See* W.R.A.P. 11.04(b) ("The reviewing court shall accept or reject a certified question within 30 days of docketing the certification order."), and W.R.A.P. 11.06 (establishing the procedure for briefing certified questions).  Guardian/Conservator filed an appellate brief, but Mr. Flory did not.

## DISCUSSION

### A. *Traditional Majority Rule*

[¶6]    The traditional majority rule throughout the United States holds a guardian, conservator, or other legal representative[2] does not have the power to file or maintain an action for the ward's divorce unless that power is specifically granted by statute.  *See, e.g., Nelson v. Nelson,* 878 P.2d 335, 337-38 (N.M. Ct. App. 1994) (most courts that have addressed the issue hold that, without specific statutory authority, a guardian may not bring an action for divorce on behalf of the ward) (citations omitted).  Under the traditional rule, courts do not read statutes granting guardians general powers to act on behalf of the ward as authorizing divorce actions because the decision to divorce is "too personal and volitional" to be pursued at the "pleasure or discretion" of a guardian.  *Brooks by Elderserve, Inc. v. Hagerty*, 614 S.W.3d 903, 910, 914 (Ky. 2021) (discussing and partially overruling *Johnson v. Johnson,* 170 S.W.2d 889 (Ky. 1943)).

[¶7]    The Vermont Supreme Court explained:

> [T]he right to end a marriage through divorce is volitional and personal such that the [l]egislature did not intend, through a general grant of authority, to permit it to be carried out by a guardian. **If we were to imply this power, we would encroach on an area that the [l]egislature has seen fit to address by statute, and without any airing of the multiple issues of public policy that might be relevant to the question.**

*Samis v. Samis,* 22 A.3d 444, 450 (Vt. 2011) (emphasis added).  *See also, Murray v. Murray,* 426 S.E.2d 781, 783-84 (S.C. 1993) (the theory behind the traditional majority view is that divorce is so personal and volitional a guardian may not bring the action without specific statutory authorization).

---

[2] The statutory definitions and powers of guardians, conservators, and other legal representatives vary from state to state.  When necessary to our discussion, we will describe the applicable statutes.  Otherwise, we are simply referring to general rules pertaining to the representation of a legally incompetent person and her estate.

[¶8]     The traditional rule recognizes that "aggrieved spouses may elect to remain in marriages that seem to be against their best interests for personal, religious, moral, or economic reasons." *Nelson,* 878 P.2d at 338 (citations omitted).

> "The basis for [the rule that a guardian, conservator, or other legal representative cannot sue for the ward's divorce] appears to be the belief that there are no marital offenses which of themselves work a dissolution of the marital relation, and the right of the injured party to regard the bond of marriage as indissoluble because of religious affiliation or for other reasons is considered so strictly personal that such relation should not be dissolved except with the personal consent of the injured spouse, which cannot be given where he or she is insane."

J.A. Connelly, Annotation, *Power of Incompetent Spouse's Guardian, Committee, or Next Friend to Sue for Granting or Vacation of Divorce or Annulment of Marriage, or to Make a Compromise or Settlement in Such Suit*, 6 A.L.R.3d 681 § 2 (1966). *See also, Brooks,* 614 S.W.3d at 910 (because the decision to divorce requires a personal choice by a spouse, the traditional rule prohibits a guardian from exercising the right on behalf of the ward unless specific legislative declaration confers the right) (citation and quotation marks omitted).

## B. *Minority Rule/Modern Trend*

[¶9]     Jurisdictions allowing a guardian, conservator, or other legal representative to bring or maintain a suit for divorce have historically been in the minority. *Nelson,* 878 P.2d at 338; Connelly, *supra,* at § 2. "[M]ost minority-rule courts construe existing statutes authorizing the guardian to pursue and defend civil claims in the interests of the[] ward to include authority to bring an action for divorce." *Nelson,* 878 P.2d at 338 (citations omitted). *See also,* Connelly, *supra*, at § 2 (the minority view is that a guardian "may bring a divorce action on behalf of the incompetent spouse"). In *Ruvalcaba ex rel. Stubblefield v. Ruvalcaba,* 850 P.2d 674, 681 (Ariz. Ct. App. 1993), the Arizona court noted that more recent decisions seem to trend toward allowing "a guardian to maintain an action for dissolution of marriage on behalf of an incompetent adult ward." Some courts have implied such authority from statutes giving a guardian power to commence "any" suit on behalf of a ward or to act on behalf of a ward as a parent can for his child. *See, e.g., In re Marriage of Gannon,* 702 P.2d 465, 467 (Wash. 1985) (en banc) (a Washington statute authorizing "a guardian to commence and prosecute *any* suit on behalf of the incompetent," together with other powers of the guardian, implied the right to pursue a divorce for the ward) (emphasis in original); *Nelson,* 878 P.2d at 339-40 (a guardian has the broad "rights, powers, and duties respecting the ward as a parent has respecting a child," which may include the right to obtain a divorce); *Ruvalcaba,* 850 P.2d at 678-81 (the legislature's general grant of authority to the guardian of an incompetent adult to act as a parent can

3

with a child, together with other general guardianship powers, authorized commencement of divorce proceedings). *But see, In re Marriage of Denowh,* 78 P.3d 63, 65 (Mont. 2003) (statute which gave the guardian of an incapacitated person "the same powers, rights, and duties respecting his ward that a parent has respecting his unemancipated minor child" did not authorize divorce because, "[b]y definition," an unemancipated child is unmarried).

[¶10] Some minority view courts have also relied on the expansion of guardianship powers to make other highly personal decisions, such as giving or withholding lifesaving medical treatment or involuntary sterilization, and the prevalence of more modern divorce laws which do not require proof of fault or injury to authorize guardian-initiated divorce actions. *See Karbin v. Karbin,* 977 N.E.2d 154, 162 (Ill. 2012) ("With the concept of 'injury' removed from divorce in Illinois, it is difficult for us to accept the view that the decision to divorce is qualitatively different from any other deeply personal decision, such as the decision to refuse life-support treatment or the decision to undergo involuntary sterilization."); *Nelson,* 878 P.2d at 340 (Because a guardian is empowered to make important life decisions for his ward and fault is not required for divorce, "it would be anomalous for us to hold that a guardian in New Mexico did not have the authority to file for divorce in light of the statutory provisions governing both guardianships and divorces."); *Ruvalcaba,* 850 P.2d at 681 ("[I]n this day and age, when guardians are permitted to refuse medical care on behalf of their incompetent wards—surely a decision that is extremely 'personal' to that individual—prohibiting that same guardian from maintaining an action for [divorce] on behalf of the ward cannot be justified." (citing *Gannon,* 702 P.2d at 467)).

[¶11] Another reason provided by minority view courts to allow a guardian or conservator to prosecute a divorce is to protect the ward's right to access and obtain redress from the courts. In *Luster v. Luster,* 17 A.3d 1068, 1079-80 (Conn. App. Ct. 2011), the Connecticut court explained that an incompetent person retained the right to bring a civil action in court but could only do so through "a properly appointed representative," such as a conservator. A divorce is a civil action and forbidding a conservator from pursuing it would deprive the ward of access to critical legal remedies. *Id. See also, Stubbs v. Ortega,* 977 S.W.2d 718, 722 (Tex. Ct. App. 1998) (a guardian can sue for a mentally incompetent ward's divorce to protect her rights and privileges guaranteed by the state constitution and laws). In *Karbin,* 977 N.E.2d at 163, the Illinois Supreme Court stated that continued application of the traditional rule prohibiting guardian-initiated divorce actions rendered a married ward "helpless to change the situation if his or her competent spouse does not want a divorce. The incompetent, vulnerable spouse is trapped in an unwanted, potentially abusive, marriage." *See also, Ruvalcaba,* 850 P.2d at 681 (it is inequitable to "leave an incompetent spouse without adequate legal recourse against potential physical, emotional or financial abuse by the competent spouse"); *Nelson,* 878 P.2d at 339 (refusing to "establish an absolute bar to a divorce action which would effectively leave an incompetent spouse at the mercy of the competent spouse"); *In re Salesky,* 958 A.2d 948, 955 (N.H. 2008) (prohibiting a guardian from pursuing a divorce initiated by the ward before he was found

4

incompetent may leave the ward "'without adequate legal recourse against potential physical, emotional or financial abuse by the competent spouse'" (quoting *Ruvalcaba*, 850 P.2d at 681)).

### C. *Wyoming Law on the Right of a Guardian or Conservator to File for the Ward's Divorce*

[¶12] The majority and minority rules and legal trends regarding guardian or conservator-initiated divorces are not especially helpful to our resolution of this case because the decisions are typically driven by the distinct statutory schemes and public policy concerns of the individual states. *See In re Marriage of Denowh,* 78 P.3d at 64-65 (taking its "cue" from other states' cases, the Montana Supreme Court examined its "own statutes governing the guardian/ward relationship" to determine if a guardian could bring a divorce action for her ward). In Wyoming, the law governing divorce, guardianship, and conservatorship is strictly statutory. *See Weiss v. Weiss,* 2009 WY 124, ¶ 13, 217 P.3d 408, 412 (Wyo. 2009) ("It is well settled that divorce is purely a statutory process, with courts having no authority in such proceedings other than that provided by statute."); *In re Guardianship of DEP*, 2021 WY 122, ¶ 21, 497 P.3d 928, 932 (Wyo. 2021) ("'Guardianship matters are controlled and governed exclusively by statute.'") (quoting *Matter of Guardianship of ARB,* 2021 WY 102, ¶ 8, 495 P.3d 297, 299 (Wyo. 2021)); *Krafczik v. Morris,* 2009 WY 53, ¶ 32, 206 P.3d 372, 382 (Wyo. 2009) ("In Wyoming, the duties and powers of a conservator are established by statute."). Thus, a guardian or conservator is without power to pursue a divorce on behalf of his ward unless a statute grants that authority. *Weiss,* ¶ 13, 217 P.3d at 412; *DEP,* ¶ 21, 497 P.3d at 932; *Krafczik,* ¶ 32, 206 P.3d at 382.

[¶13] The answer to the certified question must be found in the substantive statutes governing divorce, guardianship, and conservatorship. "Statutory interpretation is a question of law reviewed de novo." *Ailport v. Ailport,* 2022 WY 43, ¶ 22, 507 P.3d 427, 437 (Wyo. 2022) (citing *Williams v. Sundstrom,* 2016 WY 122, ¶ 19, 385 P.3d 789, 794 (Wyo. 2016)) (other citations omitted). When interpreting statutes, we "'search for the legislature's intent as reflected in the language of the statute.'" *EOG Res., Inc. v. JJLM Land, LLC,* 2022 WY 162, ¶ 16, 522 P.3d 605, 610 (Wyo. 2022) (quoting *Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue,* 2017 WY 6, ¶ 25, 387 P.3d 725, 732 (Wyo. 2017)) (other citation omitted). "'If the [statutory language] is sufficiently clear and unambiguous, [we] simply appl[y] the words according to their ordinary and obvious meaning.'" *Dellos Farms, Inc. v. Sec. State Bank,* 2022 WY 107, ¶ 9, 516 P.3d 846, 848 (Wyo. 2022) (quoting *Ailport,* ¶ 22, 507 P.3d at 437) (other citation omitted). "'We give effect to each word, clause and sentence chosen by the legislature, and construe them *in pari materia*.'" *EOG Res.,* ¶ 16, 522 P.3d at 610 (quoting *Wyodak,* ¶ 26, 387 P.3d at 732).

### 1. **Wyoming Divorce Statutes**

[¶14]   Divorce affects both the person and property of the spouses, which may implicate aspects of guardianship and conservatorship.  *See* Wyo. Stat. Ann. §§ 3-1-101(a)(v) and 3-2-201 (LexisNexis 2021) (a "guardian" is a person appointed by the court to control the care and custody of the ward's person); § 3-1-101(a)(iii) (a "conservator" is "a person appointed by the court to have the custody and control of the property of a ward").  Wyo. Stat. Ann. § 20-2-104 (LexisNexis 2021) states "[a] divorce may be decreed by the district court . . . on the complaint of the aggrieved party on the grounds of irreconcilable differences in the marital relationship."  "It matters not which party was at fault in bringing about the differences which cannot be reconciled.  All that is required [for a divorce to be granted] is that the irreconcilable differences exist."  *Grosskopf v. Grosskopf*, 677 P.2d 814, 817 (Wyo. 1984).

[¶15]   The Guardian/Conservator argues Wyoming is a no-fault divorce state and the nature of no-fault divorce implies that guardians/conservators should be able to seek divorce for their wards.  We described Wyoming's approach to fault and divorce in *Grosskopf, supra,* and *Goswick v. Goswick,* 2020 WY 103, 469 P.3d 373 (Wyo. 2020).  Whether Wyoming is a "no-fault" state or not, nothing about the statutory grounds for divorce in our state suggests that the legislature resolved the multiple issues of public policy relevant to whether a guardian/conservator may pursue a divorce for the ward.

[¶16]   To obtain a divorce, the plaintiff must establish that irreconcilable differences exist in the marital relationship.  Whether the differences between the parties truly are irreconcilable and of such a nature that the marital relationship must be terminated is uniquely personal and volitional.  The structure of Wyoming's statutory grounds for divorce does not support a conclusion that the legislature intended to include filing for a divorce as part of a guardian's or conservator's powers.

[¶17]   The dissent points to Wyo. Stat. Ann. § 20-2-108 (LexisNexis 2021) as support for a guardian/conservator's authority to file for divorce.  This statute simply states an action for divorce "shall be conducted in the same manner as [a] civil action."  *Id.*  It is a procedural statute and does not create statutory authority for a guardian or conservator to file for divorce.  Similarly, the dissent cites Wyoming Rule of Civil Procedure 17(c)(1), which allows a guardian or conservator to "sue or defend" on behalf of the ward.  This procedural rule does not grant any authority to a guardian or conservator to pursue divorce of the ward.  In Wyoming, court rules "do no more than govern procedures in the courts . . ., while laws conferring substantive rights . . .  must come from the legislature." *Nixon v. State,* 2002 WY 118, ¶ 14, 51 P.3d 851, 855 (Wyo. 2002).  *See also, Samis,* 22 A.3d at 448 ("Although the rules [the court] create[s] have the force and effect of law, they cannot create substantive rights not created by the Legislature. . . .  [T]he authority for a guardian to initiate a divorce on behalf of a person under guardianship cannot come solely from a procedural rule promulgated by this Court.").

6

[¶18]  The dissent also asserts Wyo. Stat. Ann. §§ 20-2-101 and 20-2-105 (LexisNexis 2021) support allowing a guardian or conservator to file for divorce on behalf of a ward. Section 20-2-101(e) is entirely inapposite.  It allows a guardian to sue for annulment of the ward's marriage when it was void from its inception due to the ward's incompetence. Section 20-2-101(a)(ii), (e).  Section 20-2-105(a) authorizes the court to grant a divorce if either party is "incurably insane" and has been confined to a mental hospital for at least two years.  Under this statute, a guardian is appointed for the insane spouse and the county attorney must appear and defend the insane person.  Section 20-2-105(b)-(c).  If a guardian could sue for the insane person's divorce under general divorce and guardianship laws, § 20-2-105 with its heightened procedural safeguards would have no purpose.  We do not interpret statutes in a manner which renders them meaningless.  *See Clark v. State ex rel., Dep't of Workforce Servs.,* 2016 WY 89, ¶ 14, 378 P.3d 310, 314 (Wyo. 2016).

[¶19]  Wyoming's divorce statutes, on their face, do not establish authority for a guardian or conservator to file for divorce on behalf of a ward.

## 2.  Wyoming Guardian and Conservator Statutes

[¶20]  Under Wyoming law, a "guardian" has control of the care and custody of the ward's person.  Sections 3-1-101(a)(v), 3-2-201.  Section 3-2-201 addresses a guardian's responsibilities and powers.  As relevant here,

> (a) The guardian shall:
>
> (i) Determine and facilitate the least restrictive and most appropriate and available residence for the ward;
>
> (ii) Facilitate the ward's education, social and other activities;
>
> (iii) Subject to the restrictions of W.S. 3-2-202 [listing certain decisions which require court approval], authorize or expressly withhold authorization of medical or other professional care, treatment or advice;
>
> (iv) Take reasonable care of the ward's personal property;
>
> (v) Commence protective proceedings if necessary to protect the property of the ward;
>
> . . .

7

(ix) Request the court to modify the guardian's range of duties if the changed circumstances of the ward require such modification[.] . . .

(b) The guardian may: . . .

(iii) Institute proceedings to compel the performance by any person of the duty to support or contribute to the support of the ward;

. . .

(vi) Consent to the marriage or adoption of the ward.

Section 3-2-201. Wyo. Stat. Ann. § 3-2-202(a) (LexisNexis 2021) allows a guardian to take certain actions after obtaining court approval, including committing the ward to a mental health facility, consenting to medical treatment of the ward with electroshock therapy, psychosurgery, sterilization, or long-term contraception, or relinquishing the ward's minor child for adoption.

[¶21] Wyoming's guardianship statutes do not expressly grant a guardian the power to file for divorce on behalf of the ward. Unlike guardianship statutes in some states that have recognized an implied right for guardians to sue for the ward's divorce, our statutes do not contain a general grant of authority to a guardian to pursue *any* legal action for the ward or to exercise the same rights parents have for their children. *See Nelson,* 878 P.2d at 340; *Ruvalcaba,* 850 P.2d at 678; *Gannon,* 702 P.2d at 467.

[¶22] In lieu of including a power to file for divorce, Wyoming statutes provide specific means for the guardian to access and obtain redress from the courts for threats posed to the ward by the other spouse. A guardian has the obligation to choose the most appropriate residence for the ward and facilitate the ward's education, social, and other activities. Section 3-2-201(a)(i)-(ii). These provisions give the guardian power to protect the ward from personal harm by an abusive spouse. Section 3-2-201(a)(v) requires a guardian to commence legal proceedings to protect the property of the ward. Under this provision, a guardian could, for example, use Wyoming's replevin statutes, Wyo. Stat. Ann. §§ 1-15-301 through 306 (LexisNexis 2021), to recover the ward's personal property from the other spouse. Acting under the power in § 3-2-201(b)(iii) to "[i]nstitute proceedings to compel the performance by any person of the duty to support or contribute to the support of the ward," a guardian could file a petition for the ward to obtain support from the other spouse under Wyo. Stat. Ann. § 20-2-102 (LexisNexis 2021) (allowing a spouse, without commencing divorce proceedings, to petition the court for an order requiring the other spouse to support her, provided the couple is living separately and the other spouse "does not support the [petitioning spouse] . . . within his means").

[¶23] The legislature's choice to specifically authorize a guardian to file certain types of suits while omitting any right to bring a divorce action indicates the legislature did not intend to give a guardian power to sue for his ward's divorce. "'[T]he omission of words from a statute is considered to be an intentional act by the Legislature, and [we] will not supply words in the process of interpretation.'" *City of Torrington v. Cottier,* 2006 WY 145, ¶ 12, 145 P.3d 1274, 1279 (Wyo. 2006) (quoting *Fullmer v. Wyo. Emp. Sec. Comm'n,* 858 P.2d 1122, 1124 (Wyo. 1993)). "This Court is not at liberty to add words to a statute that the legislature chose to omit." *Wyodak,* ¶ 31, 387 P.3d at 733.

[¶24] As in *Nelson, Karbin,* and *Ruvalcaba,* the Guardian/Conservator claims the legislature obviously intended for a guardian to have authority to sue for the ward's divorce because it allowed the guardian to interfere in the most intimately personal concerns of the ward's life, including by consenting to or withholding medical care or consenting to the ward's marriage or adoption. However, this argument runs into the same roadblock discussed above; by granting a guardian specific powers to interfere in the ward's personal life and not including divorce as one of those powers, the legislature expressed its clear intention to omit the right to sue for the ward's divorce from the guardian's arsenal of powers. *See Cottier,* ¶ 12, 145 P.3d at 1279; *Fullmer,* 858 P.2d at 1124.

[¶25] Like the guardianship statutes, the conservatorship statutes do not grant a conservator the authority to sue for divorce on behalf of the ward. A "conservator" is "a person appointed by the court to have the custody and control of the property of a ward[.]" Section 3-1-101(a)(iii). Thus, under the plain statutory definition, a conservator's authority is limited to matters involving the ward's property. Wyo. Stat. Ann. § 3-3-601 (LexisNexis 2021) sets out the conservator's general duty: "The conservator of the estate shall protect and preserve it, invest it prudently, account for it as provided in the Wyoming statutes, expend it for the benefit of the ward and perform all other duties required by law."

[¶26] In Wyo. Stat. Ann. § 3-3-606(a) (LexisNexis 2021), the legislature delineated specific powers a conservator may exercise without a court order which include, in pertinent part:

> (ii) Enforce, defend against or prosecute any claim by or against the ward or the conservator;
>
> (iii) Sue on and defend claims in favor of or against the ward or the conservator;
> . . .
>
> (viii) Apply the principal, income and profits of the estate of the ward, to the extent necessary, for the comfortable and suitable maintenance, education, support and care of the ward

in an amount proportionate to the value of his estate or his condition in life . . . ;

. . .

(xi) Appear for and represent the ward in all legal proceedings, unless another person is appointed for that purpose, and prosecute or defend actions, claims or proceedings in any jurisdiction for the protection of estate assets and of the conservator in the performance of his duties;

(xii) Request the court to modify the conservator's range of duties if the changed circumstances of the ward require such modifications.

As relevant here, Wyo. Stat. Ann. § 3-3-607(a) (LexisNexis 2021) states: "Upon order of the court after hearing and notice as prescribed by the court[,] the conservator may . . . (ii) [c]ompromise or settle any claim by or against the ward or the conservator . . . "; or "(iv) [d]o any other thing that the court determines to be in the best interest of the ward and his estate[.]"

[¶27] The conservator obviously has expansive statutory power to engage in litigation on behalf the ward. *See* §§ 3-3-606(a)(ii), (iii), (xi); 3-3-607(a)(ii). This protects the ward's right to access and obtain redress from the courts for threats to the ward's estate from third parties or the other spouse. However, the conservator's litigative powers, when interpreted *in pari materia* with the definition of conservator and the duties of the guardian, are limited to actions, claims, or proceedings related to the ward's estate. A conservator has no power regarding the highly personal concerns of the ward in a divorce.

[¶28] In *Murray,* 426 S.E.2d at 783, the South Carolina Supreme Court reached the same conclusion under similar conservatorship statutes and circumstances.

> The appointment of a conservator vests in him title as trustee to all property of the protected person. S.C.Code Ann. § 62-5-420 (1987). A conservator has the power to manage the assets and funds of the estate. S.C.Code Ann. §§ 62-5-424 and 425 (1987). He may prosecute or defend actions, claims, or proceedings for the protection of estate assets. S.C.Code Ann. § 62-5-424(7) (1987). Therefore, while a conservator can take action to protect estate assets, there is no statutory authority allowing him to maintain an action with regard to personal matters. Accordingly, son cannot bring this action for divorce in his capacity as conservator.

[¶29] Section 3-3-607(a)(iv) arguably contains the broadest statutory power for conservators. It allows a conservator to, with approval of the court, "[d]o any other thing that the court determines to be in the best interest of the ward and his estate[.]" *Id.* Notably, Guardian/Conservator did not follow the procedure to ask the probate court in the separate guardianship and conservatorship proceeding for authority to file the divorce for Ms. Flory because it was in her best interests. To the contrary, he contends he "should be able to initiate the divorce proceeding without prior approval of the court." Furthermore, while § 3-3-607(a)(iv) seems to allow a court to approve a conservator's request for far-reaching powers to act in the ward's and her estate's best interests, the court cannot expand the conservator's powers beyond the sphere of the ward's property to matters involving the ward's person. Without a concomitant guardianship power to sue for a ward's divorce, which we have already stated does not exist, a conservator cannot use his power to act in the ward's best interests in protecting her estate to sue for divorce.

[¶30] The ward is not without legal recourse against her spouse or third parties who threaten her estate. A court-appointed conservator has custody and control of all the ward's real and personal property. Section 3-1-101(a)(iii); Wyo. Stat. Ann. § 3-1-204(a)(i) (LexisNexis 2021) (the conservator shall "[t]ake possession of all the real and personal property of the ward"). The conservator may "bring an action to determine title to or to gain possession of the ward's property." Section 3-1-204(b). For example, a conservator may institute quiet title and ejectment actions against outside parties under Wyo. Stat. Ann. §§ 1-32-201 to 202 (LexisNexis 2021), to protect the ward's interests in real property. If the ward's spouse unilaterally takes any action which injures the ward's property interests, the conservator has the power to commence legal action to protect the ward and her estate. *See* § 3-3-606(a)(ii), (iii), (xi) (a conservator has broad powers to litigate property claims on behalf of the ward). There is no danger the other spouse could convince the ward to transfer property outside of the conservatorship because "[a] ward who is . . . a mentally incompetent person for whom a conservator has been appointed does not have the power to convey, encumber or dispose of property[.]" Wyo. Stat. Ann. § 3-1-202(a) (LexisNexis 2021). Furthermore, one spouse may not, without agreement of the other spouse or the conservator representing the spouse, transfer or encumber real property or its income, rents, and profits when it is owned as husband and wife (tenants by the entirety). *Colo. Nat'l Bank v. Miles,* 711 P.2d 390, 393-94 (Wyo. 1985). *See also, Fuger v. Wagoner,* 2020 WY 154, ¶ 19, 478 P.3d 176, 184 (Wyo. 2020) ("'[N]either spouse may convey his or her interest as a tenant by the entirety without being joined in the conveyance by the other spouse[.]'" (quoting *Est. of Marusich v. State, ex rel., Dep't of Health, Off. of Healthcare Fin./Equalitycare,* 2013 WY 150, ¶ 18, 313 P.3d 1272, 1279 (Wyo. 2013))) (other citations omitted). Thus, the legislature's authorization for a conservator to pursue statutory and common law remedies to protect the ward's estate makes it unnecessary for a conservator to obtain a divorce for the ward in order to protect her property.

[¶31] Under § 3-2-201(a)(ix) and § 3-3-606(a)(xii), the district court can modify the guardian's or conservator's "range of duties if the changed circumstances of the ward

11

require such modification[.]" The plain language of these provisions, as interpreted within the larger context of the guardianship and conservatorship statutory schemes, do not expand the guardian's or conservator's powers beyond the confines of their respective statutory roles. Instead, § 3-2-201(a)(ix) and § 3-3-606(a)(xii) allow the court to modify the scope and duration of the appointments. The order appointing a guardian or conservator must state whether the appointment is "for a specified term or permanent" and whether the scope of duties is "limited or plenary." Wyo. Stat. Ann. § 3-2-104(b)(iii)-(iv) (LexisNexis 2021) (guardian); § 3-3-104(b)(iii)-(iv) (conservator). The court may limit the "scope of duties or duration of appointment" under § 3-1-101(a)(x)-(xi). Alternatively, it may grant the guardian or conservator plenary powers which include the "full range of duties allowable by law." Section 3-1-101 (a)(xiii), (xiv). Therefore, the statutory provisions allowing the court to modify the guardian's or conservator's range of duties simply permit adjustment of the scope and duration of the appointments within the context of the powers already set out in the relevant statutes. To read these provisions as expanding a guardian's or conservator's powers outside those specified in the guardianship and conservatorship statutes would undermine the structure of the carefully constructed lists of powers authorized by the legislature.

[¶32] Another problem with recognizing an implied power for a guardian or conservator to sue for the ward's divorce is the lack of legislative guidance regarding the guardian's or conservator's burden of proof. The Arizona court in *Ruvalcaba* adopted a "substituted judgment" standard for determining if a guardian can pursue a divorce for his ward. *Id.,* 850 P.2d at 682. "[T]he guardian may proceed after concluding that this is what the ward would want, basing that conclusion on what is known of the ward's preferences and the ward's general values regarding marriage and divorce and overall manner of living." *Id.* at 681-82. In *Nelson,* 878 P.2d at 340, the New Mexico court stated the guardian's decision to file for divorce must be guided primarily by the ward's values and "the wishes of an incompetent adult ward with regard to the permanence of marriage vows [must] be respected." However, "[i]f those wishes cannot be definitively ascertained," the guardian could still obtain a divorce for the ward if it was in the ward's best interests and the grounds for divorce were proven. *Id.* In *Brooks,* 614 S.W.3d at 914, the Kentucky court decided the guardian could request permission from the court "overseeing the guardianship to initiate [in family court] a dissolution of marriage action on behalf of" the ward, and permission would be granted if the guardian proved a divorce would serve the ward's best interests.

[¶33] These differing standards highlight a problem with allowing a guardian and/or a conservator to proceed with a divorce in the absence of legislative guidance on the procedure for doing so. Without statutory direction on whether the decision to move forward with a ward's divorce should be based upon the ward's subjective views on divorce or the objectively-determined best interests of the ward, the court risks usurping the exclusive role of the legislature in establishing divorce, guardianship, and conservatorship law. This brings us full circle to the original observation that a spouse's decision to divorce

12

(or not) is highly personal and imbued with considerations which may not necessarily serve the spouse's best interests or seem reasonable to other people. We refuse to make an independent judgment on these important matters without legislative action specifically establishing Wyoming's public policy on a guardian's or conservator's right to sue for the ward's divorce.

**CONCLUSION**

[¶34] In answer to the certified question, Wyoming law does not permit a guardian or conservator to move for and prosecute a divorce action on behalf of the ward. We recognize there may be prior cases where a guardian or conservator obtained a divorce for a ward, but the question of authority to do so was not properly raised or appealed. *See, e.g., Matter of Guardianship of McNeel,* ¶¶ 34-35, 109 P.3d at 519. Considering the factors for retroactive or prospective application of a court decision as described in *Adkins v. Sky Blue, Inc.,* 701 P.3d 549, 552 (Wyo. 1985), and *Best v. Best,* 2015 WY 133, ¶¶ 29-30, 357 P.3d 1149, 1156 (Wyo. 2015), we hold our decision in this case applies to the parties before us and beyond that has prospective application only.

**FENN, J., dissenting, in which FOX, C.J., joins.**

[¶35]   I respectfully dissent from the proposed majority opinion.

[¶36] The majority is correct that the law governing divorce, guardianships, and conservatorships is strictly statutory. Like other jurisdictions that have been tasked with answering the same question that is presently before the Court, our guardianship and conservatorship statutes do not expressly permit or prohibit the filing of a divorce action by a third party on behalf of an incompetent ward. Other courts have been faced with the same conflicting arguments that are present in this case. Those seeking to prevent the filing of the divorce action argue if the legislature intended to provide for an action by a third party, it would have done so expressly in the statute. *Ruvalcaba,* 850 P.2d at 678. Those seeking to allow a guardian or conservator to file a divorce on behalf of a ward argue if the legislature intended to prohibit an action by a third party on behalf of a spouse, it would have expressly said so. *Id.* Following what the majority acknowledges is the "modern trend," I would adopt the "minority rule" and find the broad powers and duties our legislature granted to guardians and conservators encompass allowing a guardian or conservator to file a divorce action. *See id.* at 684 (finding a divorce action could be filed under the guardian's general powers to act on behalf of an incompetent ward); *Nelson*, 878 P.2d at 338 (citing *Campbell v. Campbell*, 5 So.2d 401, 402 (Ala. 1941); *Ruvalcaba*, 850 P.2d at 678; *Kronberg v. Kronberg*, 623 A.2d 806, 809–10 (N.J. Super. Ch. Div. 1993)) ("[M]ost minority-rule courts construe existing statutes authorizing the guardian to pursue and defend civil claims in the interest of their ward to include authority to bring an action for divorce.").

[¶37]   The majority is correct that we are not at liberty to add words to a statute that the legislature chose to omit. *City of Torrington*, 2006 WY 145, ¶ 12, 145 P.3d at 1279 (quoting *Fullmer*, 858 P.2d at 1124); *Wyodak*, 2017 WY 6, ¶ 31, 387 P.3d at 733; *see also Adekale v. State*, 2015 WY 30, ¶ 13, 344 P.3d 761, 765 (Wyo. 2015) (citing *Stutzman v. Office of Wyo. State Eng'r*, 2006 WY 30, ¶¶ 14–16, 130 P.3d 470, 475 (Wyo. 2006)) ("[W]e will not add language or choose other words to change the meaning of a statute."). However, the majority opinion does not recognize that "exceptions not made by the legislature in a statute cannot be read into it." *Delcon Partners LLC v. Wyo. Dep't of Revenue*, 2019 WY 106, ¶ 10, 450 P.3d 682, 685 (Wyo. 2019) (quoting *Seherr-Thoss v. Teton Cty. Bd. of Cty. Comm'rs*, 2014 WY 82, ¶ 20, 329 P.3d 936, 945 (Wyo. 2014)). While these two principles may appear to conflict, adopting the minority/modern rule would be consistent with both principles. This approach allows us to recognize what the legislature actually stated without adding words to create exceptions that do not exist.

[¶38]   In *Grosskopf*, we recognized "[w]ith the enactment of § 20-2-104 . . . parties could obtain a divorce, without regard to fault, upon proof of irreconcilable differences." *Grosskopf*, 677 P.2d at 819. Under Rule 1 of the Wyoming Rules of Civil Procedure, the rules apply in "all civil actions and proceedings" except as stated in Rule 81. In turn, Rule

14

81 carves out exceptions for special statutory proceedings. The legislature has not chosen to make marital dissolution a special statutory proceeding. Instead, Wyoming Statute § 20-2-108 (LexisNexis 2021) states actions for divorce "shall be conducted in the same manner as civil actions . . . except a divorce decree shall not be entered less than twenty (20) days from the date the complaint is filed." Under Rule 17(c) of the Wyoming Rules of Civil Procedure, a guardian or conservator "may sue or defend on behalf of . . . an incompetent person[.]" Rule 17(c) does not contain an exception for divorce actions. *See also Ruvalcaba,* 850 P.2d at 678 (finding a guardian could file a divorce on behalf of a ward because nothing in Arizona's guardianship statute or Rule 17 precluded a guardian from doing so). The approach outlined by the majority would add words into Wyoming Statute § 20-2-108 so that it would say divorce actions shall be conducted as civil actions, except that they may not be filed by a guardian or conservator on behalf of an incompetent ward. "We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence." *Sullivan v. State*, 2019 WY 71, ¶ 10, 444 P.3d 1257, 1260 (Wyo. 2019) (quoting *PacifiCorp, Inc. v. Wyo. Dep't of Revenue*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908–09 (Wyo. 2017)). Under this principle, we must assume the guardianship statutes and the divorce statutes should be read in harmony, and we cannot add words into Wyoming Statute § 20-2-108 to create an exception that is not there.

[¶39] Although Wyoming Statute § 20-2-104 allows for divorce on the grounds of irreconcilable differences, it is not the only statute that provides a path for the dissolution of a marriage. Under Wyoming Statute § 20-2-105(a) (LexisNexis 2021), a divorce may be granted where either party has become "incurably insane," and the insane person has been confined in a mental hospital for at least two years. The statute further states that upon the filing of a verified complaint, the district court shall appoint someone to act as a guardian for the insane person. Wyo. Stat. Ann. § 20-2-105(b). Similarly, Wyoming Statute § 20-2-101(e) allows "a guardian or next friend" to maintain an action of annulment on behalf of a ward who was "mentally incompetent" at the time of the marriage. Thus, under the majority's interpretation, a guardian could file these actions but could not file for divorce on the grounds of irreconcilable differences. This conflicts with Wyoming Statute § 20-2-108, which states divorce actions should be treated like other civil actions. The fact that a guardian can bring these actions suggests the legislature was not concerned about allowing a guardian to intrude into the personal and volitional decision of filing for divorce. The approach taken by the majority would allow a guardian or conservator to defend a divorce action filed against an incompetent spouse while precluding that guardian or conservator from filing such an action on the ward's behalf, even if while incompetent a spouse is able to clearly articulate his or her wish to file for divorce. This inconsistency is avoided under the minority/modern rule.

[¶40] Although the majority recognizes under Wyoming Statute § 3-2-201(a)(v), a guardian is required to "[c]ommence protective proceedings if necessary to protect the

15

property of the ward," the majority indicates this is limited to actions like replevin, even though the statute contains no such limitation, nor does it include an exception for divorce actions. In addition, Wyoming Statute § 3-2-201(b)(iii) allows a guardian to institute proceedings to compel the performance of any duty to contribute to the support of the ward. Yet, the majority finds this authority is limited to bringing an action for support under Wyoming Statute § 20-2-102, rather than a divorce action. Such an exception does not appear in Wyoming Statute § 3-2-201(b)(iii), and Wyoming Statute § 20-2-114 allows the district court to order a spouse to pay alimony when making disposition of the marital property. Wyoming Statutes §§ 3-2-201(a)(v) and 3-2-201(b)(iii) do not contain an exhaustive list of the types of actions a guardian could file to protect the ward's property or to compel financial support. The majority's approach requires us to either add words into these statutes or create an exception for divorce actions, both of which are prohibited by our principles of statutory interpretation. Further, a guardian is required to "[t]ake reasonable care of the ward's personal property[,]" and "[e]xercise due care to conserve excess funds for the ward's future needs." Wyo. Stat. Ann. § 3-2-201(a)(iv), (vii). A divorce might be necessary to comply with these mandates, but it would be precluded under the majority's holding.

[¶41] Similarly, the majority infers a guardian cannot seek permission from the court under Wyoming Statute § 3-2-201(a)(ix) to file a divorce, because it falls outside the powers specifically granted by the guardianship statutes. However, when Wyoming Statute § 3-2-201(a)(ix) is read in conjunction with W.R.C.P. 17(c) and Wyoming Statute § 20-2-108, the district court has the authority to "modify the guardian's range of duties if the changed circumstances of the ward require such modifications[,]" which could include seeking a divorce. *See In re Salesky*, 958 A.2d 948, 953–54 (N.H. 2008) (holding the "catchall provisions" of New Hampshire's guardianship statutes that allowed a court to impose "additional duties" when in the best interests of the ward included authorizing a guardian to file a divorce on the ward's behalf). If the district court could not grant powers to a guardian that were not expressly listed in Wyoming Statutes §§ 3-2-201(a)(i)–(viii) and 3-2-202, then Wyoming Statute § 3-2-201(a)(ix) would be meaningless. "This Court will not interpret a statute in a way which renders any portion of it meaningless or in a manner producing absurd results." *Adekale*, 2015 WY 30, ¶ 13, 344 P.3d at 765–66 (citing *Stutzman*, 2006 WY 30, ¶ 16, 130 P.3d at 475).

[¶42] Turning to the conservatorship statutes, the majority recognizes Wyoming Statute § 3-1-204(b) allows a conservator to "bring an action to determine title to or gain possession of the ward's property." Yet it finds this is limited to "quiet title and ejectment actions against outside parties," even though no such limitation appears in Wyoming Statute § 3-1-204(b), nor does the statute contain an exception for divorce actions. A divorce would determine title to and possession of the ward's property. *See* Wyo. Stat. Ann. § 20-2-114 ("in granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable . . . ."). Again, the majority approach requires us to read words into the statute to limit the type of actions a conservator may file.

16

[¶43] The majority recognizes Wyoming Statute § 3-3-606(a) allows a conservator to "[e]nforce, defend against or prosecute **any** claim by or against the ward," "[s]ue on and defend claims in favor of or against the ward," and "[a]ppear for and represent the ward in **all legal proceedings** . . . and prosecute or defend **actions, claims or proceedings in any jurisdiction** for the protection of the estate assets . . . ." (Emphasis added). The majority also recognizes Wyoming Statute § 3-3-607(a) allows the conservator, with the consent of the court, to "[c]ompromise or settle **any claim** by or against the ward," or "[d]o **any other thing** that the court determines to be in the **best interest of the ward** and his estate[.]" (Emphasis added). Yet, despite this broad language, the majority adds words to the statute to find there is an implied exception for divorce cases. This finding is contrary to our rules of statutory interpretation. *See City of Torrington*, 2006 WY 145, ¶ 12, 145 P.3d at 1279 (quoting *Fullmer*, 858 P.2d at 1124); *Wyodak*, 2017 WY 6, ¶ 31, 387 P.3d at 733; *Delcon Partners LLC*, 2019 WY 106, ¶ 10, 450 P.3d at 685 (quoting *Seherr-Thoss*, 2014 WY 82, ¶ 20, 329 P.3d at 945).

[¶44] In addition to those powers listed above, a conservator may also ask the court "to modify the conservator's range of duties if the changed circumstances of the ward require such modifications." Wyo. Stat. Ann. § 3-3-606(a)(xii). When read in conjunction with W.R.C.P. 17(c) and Wyoming Statute § 20-2-108, this statutory provision allows the court to authorize a conservator to file a divorce action on behalf of the ward when it is in the best interests of the ward. If we gave this statute the interpretation proposed by the majority and found the district court could not grant a conservator powers that were not expressly listed in Wyoming Statutes §§ 3-3-606(a)(i)–(xi) or 3-3-607, then § 3-3-606(a)(xii) would be rendered meaningless. We cannot interpret a statute in a way that renders any portion of it meaningless. *Adekale*, 2015 WY 30, ¶ 13, 344 P.3d at 765–66 (citing *Stutzman*, 2006 WY 30, ¶ 16, 130 P.3d at 475).

[¶45] Our primary objective when interpreting statutes is to give effect to the legislature's intent. *Delcon Partners, LLC,* 2019 WY 106, ¶ 9, 450 P.3d at 685 (citing *Mattheis Co. v. Town of Jackson*, 2019 WY 78, ¶ 14, 444 P.3d 1268, 1273 (Wyo. 2019)). "[I]t is one of the surest indexes of a mature and developed jurisprudence to remember that the statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Adekale*, 2015 WY 30, ¶ 13, 344 P.3d at 765 (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945)). "Our role . . . is not to determine whether the legislature's chosen policy is the best one; . . . [we] give effect to the one it chose." *Delcon Partners, LLC, ¶* 9, 450 P.3d at 685.

[¶46] The majority holds a guardian or conservator cannot file for a divorce on behalf of a ward because the decision to file a divorce is uniquely personal and volitional, and spouses might choose to remain in a marriage that is not in their best interest. This rationale has been rejected by some of those jurisdictions that have adopted the minority rule. Those jurisdictions look at the other extremely personal decisions guardians and conservators are

17

specifically authorized to make on behalf of a ward, and given the personal nature of those decisions, they have found adopting a blanket rule prohibiting that same guardian from maintaining an action for dissolution on behalf of the ward cannot be justified. *See, e.g., Ruvalcaba*, 850 P.2d at 681. When rejecting the theory that divorce is exclusively personal and volitional, the Supreme Court of Illinois found:

> [I]t is difficult for us to accept the view that the decision to divorce is qualitatively different from any other deeply personal decision, such as the decision to refuse life-support treatment or the decision to undergo involuntary sterilization. Each of these latter decisions can rarely be undone. The same cannot be said for the decision to divorce—if the disabled adult regains competency and disagrees with the guardian's decision, remarriage to the former spouse may be possible. Thus, there is no reason why the guardian should not be allowed to use the substituted-judgment provisions found in section 11a–17(e) of the Probate Act to make all types of uniquely personal decisions that are in the wards's [sic] best interests, including the decision to seek a dissolution of marriage. Under our modern legal framework, "[i]f one party to a marriage need not be 'at fault,' and divorce is arguably more 'acceptable' in American society, it is not inconceivable that elderly, mentally incapacitated, or mentally ill individuals could want or need to institute divorce proceedings, where historically their wants or needs were legally irrelevant or dismissed as unascertainable."

*Karbin v. Karbin ex rel. Hibler,* 977 N.E.2d 154, 162–63 (Ill. 2012) (quoting Diane Snow Mills, Comment, *"But I Love What's–His–Name": Inherent Dangers in the Changing Role of the Guardian in Divorce Actions on Behalf of Incompetents,* 16 J. Am. Acad. Matrimonial Law, 527, 528–29 (2000)); *see also In re Marriage of Gannon*, 702 P.2d 465, 467 (Wash. 1985) (*"*[I]n these days of termination of life support, tax consequences of virtually all economic decisions, no-fault dissolutions and the other vagaries of a vastly changing society, we think an absolute rule denying authority is not justified nor in the public interest."). Those courts recognize the purpose of allowing a guardian or conservator to file a divorce on the ward's behalf "is to ensure that the legal disability imposed will not undermine adequate protection of a ward's interest." *Luster v. Luster*, 17 A.3d 1068, 1078 (Conn. App. Ct. 2011) (quoting *Cottrell v. Connecticut Bank & Trust, Co.*, 398 A.2d 307, 310 (Conn. 1978)).

[¶47]  As defined by the guardianship and conservatorship statutes, an incompetent person is one "who, for reasons other than being a minor, is unable unassisted to properly manage and take care of himself or his property . . . ." Wyo. Stat. Ann. § 3-1-101. The legislature

granted guardians and conservators the power to make decisions for a ward that are deeply "personal and volitional" in nature. Wyoming Statute § 3-2-201(b)(vi) allows a guardian to "[c]onsent to the marriage or adoption of the ward." A guardian also has the power to "authorize or expressly withhold authorization of medical or other professional care, treatment or advice[.]" Wyo. Stat. Ann. § 3-2-201(a)(iii). Subject to the court's approval, a guardian can commit the ward to a mental hospital, consent to the ward's sterilization or other forms of permanent contraception, relinquish the ward's minor children for adoption, and execute advance medical directives or durable power of attorney for health care decisions, which make end of life decisions for the ward. Wyo. Stat. Ann. § 3-2-202(a). A ward might have personal, religious, moral, or economic reasons for not wanting medical care or contraception, but the legislature was not concerned about allowing a guardian or conservator to intrude into those decisions. The majority implies the legislature did not expressly include filing a divorce in the guardianship statutes because the decision to file a divorce is too personal and volitional. However, it is also possible the legislature decided to leave filing a divorce off the list of enumerated powers because it felt the decision to file a divorce is not as personal and volitional as the other enumerated decisions and did not warrant being specifically called out. As discussed above, we presume the legislature "acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law . . . ." *Sullivan*, 2019 WY 71, ¶ 10, 444 P.3d at 1260 (quoting *PacifiCorp, Inc.*, 2017 WY 106, ¶ 10, 401 P.3d at 908–09). The legislature chose to grant guardians and conservators "the authority to interfere in the most intimately personal concerns of an individual's life." *Nelson*, 878 P.2d at 340. Given the broad language of the statutes cited above, "it makes little sense to adopt a per se rule arbitrarily limiting the ability of a guardian [or conservator] to act for her or his ward in a divorce action." *Id.* at 341. Creating such a rule as suggested by the majority requires us to read words into the statutes that are not there to create an exception that does not exist. I would adopt the minority/modern rule and answer the certified question in the affirmative, allowing a guardian/conservator to move for and prosecute a divorce action on behalf of the ward.